747 A.2d 765

**Ellen M. ZAVIAN**

v.

**Julie FOUDY, et al.**

**No. 0074, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

March 8, 2000.

Troy Powers (Powers & Powers, on the brief), Baltimore, for appellant.

Kimberly A. Manuelides (Henry R. Abrams and Saul, Ewing, Weinberg & Green, on the brief), Baltimore, for appellees.

Argued before WENNER, HOLLANDER and JOHN J. BISHOP, (Retired, Specially assigned), JJ.

WENNER, Judge.

This appeal arises from a Motion to Dismiss granted by the Circuit Court for Baltimore County in favor of appellees, Julie Foudy, Kristine Lilly, and Carla Overbeck. Appellant is Ellen M. Zavian. On appeal, appellant presents us with the following question:

Did the trial court err in finding a lack of personal jurisdiction over the Appellees, when sufficient Maryland contacts existed?

We will answer "no," and affirm the judgment of the circuit court.

### Facts

Appellees are members of the United States Women's National Soccer Team ("the Team"). Appellant is a Maryland attorney. She practices law from an office in Columbia, Maryland. In 1995, Ms. Foudy contacted appellant on behalf of the Team, seeking appellant's assistance in a labor dispute involving the United States Soccer Federation.[1] After the dispute was resolved, appellant continued to assist the Team with legal matters. Later, appellees individually contacted appellant. Each proposed that she act as their agent.

As a result, appellant entered into personal management agreements with Foudy, Lilly, and Overbeck. Each agreement provided for appellant to act as exclusive agent for each appellee "to negotiate a footwear/apparel agreement with a reputable company that has maintained a commitment to the soccer industry." As a result, appellant negotiated an endorsement contract for each appellee.

These negotiations were conducted by appellant from her Maryland law office. None of the appellees resided in Maryland, and the Team is headquartered in Florida. Ms. Foudy resides in California; Ms. Lilly resides in Connecticut; and

---

**1.** According to appellees, the Women's Sports Foundation maintained a list of attorneys willing to provide pro bono or reduced rate services to female athletes. Appellant was contacted by Ms. Foudy because her name was on that list.

Ms. Overbeck resides in North Carolina. None of the appellees came to Maryland to meet with appellant. Instead, the management agreements were prepared in appellant's Maryland law office, and were then mailed or faxed to each appellee for approval and execution. In fact, all contacts among the parties were by fax, telephone, or mail. Moreover, appellant's negotiations with the footwear/apparel companies were also by fax, telephone, or mail.

Ms. Foudy entered into a footwear/apparel agreement with Reebok, International, Inc. Reebok is headquartered in Massachusetts. Ms. Overbeck entered into a similar agreement with FILA USA, Inc. FILA is a Delaware corporation with its principal place of business in Maryland. Ms. Lilly also entered into a similar agreement with Adidas. Adidas is also a Delaware Corporation. Oregon is Adidas' principal place of business.

Appellant mailed invoices for her services to California, Connecticut and North Carolina, and each invoice was paid by mail.

In July 1997, appellant decided to provide legal services for the Team only. She informed each appellee of her decision by mail, thus terminating each individual management agreement. Appellant subsequently mailed each appellee an invoice to cover the balance of services, and each appellee declined to pay. In May 1998, appellant filed a complaint in the Circuit Court for Baltimore County, charging the appellees with breach of contract and seeking damages. Each appellee responded with a Motion to Dismiss on the grounds of lack of personal jurisdiction. After the motions were granted, appellant noted this appeal.

### Discussion

Appellant complains the circuit court committed reversible error when it granted appellees' motions to dismiss. We do not agree.

"The burden of alleging and proving the existence of a factual basis for the exercise of personal jurisdiction, once the

issue has been raised, is upon the [appellant]." *McKown v. Criser's Sales and Service*, 48 Md.App. 739, 747, 430 A.2d 91 (1981).

Our appellate courts have often been called upon to determine the reach of Maryland's long-arm statute: Md.Code Ann. (1974, 1998 Repl.Vol., 1999 Cumm. Supp), § 6–103 of the Cts. & Jud. Proc. Article (CJP). Here, appellant invokes CJP § 6–103(b)(1) in support of her claim that the Circuit Court for Baltimore County may exercise personal jurisdiction over the nonresident appellees. CJP Section 6–103(b)(1) provides:

(b) In general.—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

In appellant's view, the court may exercise personal jurisdiction over the nonresident appellees, because appellant transacted and performed extensive business, work, and services in Maryland for each of them. We are not aware of any Maryland case involving the exercise of personal jurisdiction over a nonresident defendant due to a plaintiff's agency relationship with a non-resident defendant. Thus, we believe this to be a case of first impression. Appellant invites us to accept her Maryland activities on behalf of the nonresident appellees as grounds for Maryland to exercise personal jurisdiction over them. We shall decline appellant's invitation.

## I.

In *McGann v. Wilson*, 117 Md.App. 595, 602, 701 A.2d 873 (1997), we said:

When a Maryland court determines whether it may exercise personal jurisdiction over a nonresident defendant, it must engage in a two-prong analysis. First it must determine whether jurisdiction is established under Maryland's long-arm statute and, if so, then it must determine whether the exercise of jurisdiction comports with the Fourteenth Amendment Due Process Clause.

*See also Bahn v. Chicago Motor Club Ins. Co.*, 98 Md.App. 559, 634 A.2d 63 (1993). "The purpose of the Maryland long-arm statute was to extend the scope of jurisdiction over nonresident defendants to the limits of the Fourteenth Amendments's Due Process Clause as declared by the United States Supreme Court." *McGann*, 117 Md.App. at 601, 701 A.2d 873 (citations omitted.) Hence, the reach of the Maryland long-arm statute depends upon whether its scope of jurisdiction comports with the Fourteenth Amendment due process clause.

When called upon to determine whether Maryland may exercise personal jurisdiction over a nonresident defendant, we must determine the extent of the Fourteenth Amendment's due process clause. In doing so, we must determine whether we have general or specific jurisdiction or neither. "General jurisdiction exists where a defendant maintains continuous and systematic contacts with the forum, which constitute doing business in the forum." *McGann*, 117 Md.App. at 602, 701 A.2d 873. Specific jurisdiction exists where "the cause of action arises out of the conduct which constitutes the contacts" with the forum state. *Camelback Ski Corp. v. Behning*, 312 Md. 330, 338, 539 A.2d 1107 (1988). We are here faced with appellant's claims of breach of contract by the nonresident appellees. Because the nonresident appellees have not had "continuous and systematic" contacts with Maryland, general jurisdiction is not involved.

The United States Supreme Court has described due process in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In *International Shoe Co. v. Washington, supra*, 326 U.S. at 316, 66 S.Ct. 154, the Supreme Court said:

... due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does

not offend "traditional notions of fair play and substantial justice."(citation omitted.)

In *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. 1228, the Supreme Court said:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*McGee v. International Life Ins. Co., supra,* involved an action brought in California by the beneficiary of an insurance policy. Although the insured and the beneficiary had resided in California, the defendant was a Texas company, an assignee of the initial insurer. *McGee,* 355 U.S. at 221, 78 S.Ct. 199. The sole contact of the defendant with California was a reinsurance contract mailed to the California insured. *Id.* "In finding that the Texas company had sufficient contacts with California such that the exercise of jurisdiction by the California courts did not violate due process, the Court held that even a single transaction in the forum may be sufficient for the exercise of jurisdiction, in a suit based on that transaction, where the transaction 'had substantial connection with that State.'" *Geelhoed v. Jensen,* 277 Md. 220, 228, 352 A.2d 818 (1976) (quoting *McGee v. International Life Ins. Co.,* 355 U.S. at 223, 78 S.Ct. 199).

Appellant first contends that her activities in Maryland as agent for the appellees provides sufficient contacts with Maryland. Appellant also contends the appellees have had sufficient contacts with appellant in Maryland, apart from her activities as their agent. We shall examine each of appellant's contentions.

## II.

Appellant first claims that the business efforts and services performed in Maryland as agent for the nonresident

appellees permits Maryland's courts to exercise personal jurisdiction over them. According to appellant, "over one hundred telephone calls were made between appellant's place of business and appellees as well as on behalf of the appellees to numerous nationwide footwear/apparel companies." In addition to numerous telephone calls, multiple faxes, mailings, overnight packages and negotiations with footwear/apparel companies originated in Maryland, and constituted business efforts and services performed in Maryland for the nonresident appellees.

We are not aware of, nor have we been referred by appellant to any Maryland cases addressing this issue. Several other jurisdictions have, however, addressed similar circumstances.

In *Copeland v. Life Science Techs. Ltd.*, No. 97 Civ. 0456(SHS), 1997 U.S. Dist. LEXIS 18210, 1997 WL 716915 (S.D.N.Y. Nov. 17, 1997), a federal district court in New York said that a nonresident defendant who had placed but a single telephone call to a New York resident was not subject to personal jurisdiction. The purpose of the telephone call to New York was to request the plaintiff to conduct services for the defendant in New York. *Id.* While the plaintiff claimed this permitted New York to exercise personal jurisdiction over the nonresident defendant, the federal district court concluded:

> [T]hose services may not be attributed to the principal for the purpose of litigation by the agent against the principal. See *Kulas v. Adachi*, 1997 U.S. Dist. LEXIS 6868, 1997 WL 256957 [*3] (S.D.N.Y., May 16, 1997), at *8. "In a suit between an agent and his out-of-state principal, there is no jurisdiction over the principal where the plaintiff-agent 'is relying on his own activities within the State, rather than on defendant's independent activities.'" *Metropolitan Air Serv. Inc. v. Penberthy Aircraft Leasing Co.*, 648 F.Supp. 1153, 1157 (S.D.N.Y.1986) (quoting *Haar v. Armendaris Corp.*, 40 A.D.2d 769, 770, 337 N.Y.S.2d 285, 288 (1 st Dep't 1972), rev'd, 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973) (adopting Appellate Division dissenting opinion)).

" [A] plaintiff must point to acts by the defendant, independent of the plaintiff-agent's acts, which are sufficient in themselves to confer jurisdiction." *Kulas* at \*8, 1997 WL 256957 at \*3.

*Copeland*, supra at \*3–4, 1997 WL 716915 at \*1. In *Emmet, Marvin & Martin v. Maybrook, Inc.*, No. 90 Civ. 3105(MGC), 1990 U.S. Dist. LEXIS 16753, 1990 WL 209440 \* 2 (S.D.N.Y. Dec. 12, 1990) at \*5–6, the same federal district court said: "The New York Court of Appeals has made clear that where an attorney sues an out-of-state client, the personal jurisdiction inquiry must focus on the client's purposeful activities in the state, not on the attorney's activities on behalf of the client."

In *Jacobson v. Stram*, No. 80 C. 1228, 1980 U.S. Dist. LEXIS 15437, (N.D.Ill. Oct. 29, 1980), the federal district court for the Northern District of Illinois considered a situation similar to the one now before us. In *Jacobson*, an Illinois attorney had negotiated several contracts for a Louisiana resident. These were the only contacts between the Illinois attorney and his nonresident client. *Id.* Following the demise of the Illinois attorney, the executor of his estate claimed the professional services performed in Illinois for the nonresident client subjected the out-of-state client to personal jurisdiction in Illinois. *Id.* As the *Jacobson* court put it, "An attorney's mere performance of professional services in Illinois on behalf of an out-of-state client is not sufficient to subject the foreign party to *in personam* jurisdiction in Illinois." *Id.* at \*5.

The Seventh Circuit Court of Appeals has adopted the doctrine of *International Shoe Co. v. Washington, supra.* In *Orton v. Woods Oil & Gas, Co.*, 249 F.2d 198 (7th Cir.1957), the only contact had with Illinois by a nonresident defendant was its dealings with a resident of Illinois. The Court said:

It is sufficient here to hold that the performance of the professional services by plaintiffs for the benefit of defendant as herein outlined, standing alone, are insufficient to bring defendant within any reasonable construction of the [Illinois "long arm" statute]. To rule otherwise would be to

stretch the doctrine of the *International Shoe* case to the breaking point, and to expand the Illinois concept of State jurisdiction over nonresidents beyond the limit imposed by due process.

*Id.* at 202–03. *See also Geldermann & Co. v. Dussault*, 384 F.Supp. 566, 573 (N.D.Ill.1974) ("The mere performance of professional services in Illinois on behalf of an out of state client is not in itself sufficient to subject the foreign party to *in personam* jurisdiction in Illinois.")

■ The U.S. District Court for the District of Maryland addressed this issue in *Snyder v. Hampton Industries, Inc.*, 521 F.Supp. 130 (1981).[2] *Snyder* involved circumstances similar to those in the case at hand. There, plaintiffs were employed by a nonresident corporation as sales representatives to sell products to customers in Maryland. *Id.* The corporation maintained headquarters in North Carolina. *Id.* In an action filed in Maryland by the plaintiffs against the nonresident corporation, the corporation challenged Maryland's personal jurisdiction. *Id.* The principal issue addressed by the Court was whether the nonresident corporation could "transact business" in Maryland, although it was not, nor had it at anytime been, physically present in Maryland. *Id.* According to the Court, "[i]f subsection (b)(1) of the Maryland long arm statute is indeed coextensive with the Due Process Clause, a nonresident can reasonably be held to have transacted business in Maryland although never physically present in the State." *Id.* at 141.

■ Unlike the situation in the present case, the foreign corporation had been for more than thirty years soliciting business in, and selling to Maryland customers. In doing so, this corporation created an ongoing presence in Maryland. Thus, the Court concluded that the foreign corporation had had "continuous and systematic contacts" with Maryland as well as "purposeful sales to Maryland customers." *Id.* In

---

**2.** Federal district courts, however, are bound by the decisions of the Maryland Courts of Appeal interpreting Maryland law. See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

addition, the federal court agreed that "[c]ertain of the plaintiffs' acts in Maryland can be attributed to Hampton for jurisdictional purposes." *Id.* The Court declined to follow the New York courts, and said:

> The New York courts permit the exercise of personal jurisdiction over a nonresident who has acted in the state through an agent, when the nonresident is sued by a third party. When it is the agent suing the nonresident, those courts will not attribute the agent's in-state acts to the nonresident, even if a classic agency relationship is involved. (Citation omitted.) . . . This latter rule . . . is inconsistent with the conclusion reached by the District of Columbia Court of Appeals in *Rose v. Silver*, 394 A.2d 1368 (D.C.1978) . . .
>
> . . . This court finds Judge Ferren's reasoning in *Rose* to be more persuasive than that employed by the New York courts, and therefore declines to follow the nonattribution rule . . .

*Snyder, supra*, 521 F.Supp. at 141–42. We do not agree. In our view, for personal jurisdiction to be exercised over a nonresident defendant by attributing an agent's in-state activities to the nonresident defendant would offend traditional notions of fair play and substantial justice.

Turning now to the instant case, we reject appellant's contention that professional services rendered by her in Maryland for the nonresident appellees subject the appellees to Maryland's long arm statute. We are not saying that an agent's in-state activities for a nonresident principal may never be attributed to its principal. We are concluding simply that under the present circumstances, appellant's Maryland activities as agent for the nonresident appellees does not subject them to Maryland's long arm statute. *Mohamed v. Michael*, 279 Md. 653, 370 A.2d 551 (1977); *Harris v. Arlen Properties*, 256 Md. 185, 260 A.2d 22 (1969); and *Novack v. Nat'l Hot Rod Ass'n*, 247 Md. 350, 231 A.2d 22 (1967), involve third party actions against nonresident defendants.

■ In CJP § 6–103(b), the phrase "by an agent" encompasses circumstances under which a resident plaintiff seeks personal jurisdiction over a nonresident defendant, based upon the resident's actions as agent for the nonresident defendant in Maryland. Under such circumstances, an agent's Maryland activities constitute the minimum contacts required by the Maryland long-arm statute. Under such circumstances, the agent and nonresident principal are considered one party,[3] to enable a third party plaintiff to demonstrate minimum contacts with a nonresident defendant. In the instant case, to require the nonresident appellees to defend appellant's Maryland action based solely on appellant's professional services rendered in Maryland unilaterally by appellant would, in our view, stretch the doctrine of *International Shoe* beyond the limit of due process. Moreover, to do so would be contrary to Maryland's traditional notions of fair play and substantial justice.

Nor do we consider appellant's services for appellees to constitute transacting business in Maryland. The appellees neither sought to endorse Maryland businesses, nor sought an agent with Maryland contacts. The professional services rendered by appellant in Maryland for the nonresident appellees could best be termed as business **from** Maryland, or as the Supreme Court put it, "unilateral activity," [4] rather than business **within** Maryland. These services could have been conducted from any where.

### III.

■ We must now determine whether the nonresident appellees had sufficient contacts with Maryland to enable Maryland's courts to exercise personal jurisdiction over them. As noted, general jurisdiction does not apply here. In considering specific jurisdiction, the minimum-contacts inquiry focuses

---

**3.** We believe it would be fundamentally unfair to view appellant and the nonresident appellees as one party.

**4.** *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. 1228.

on the "relationship between the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). *Bahn, supra*, 98 Md.App. at 571, 634 A.2d 63. "In determining whether 'minimum contacts' . . . exist, it is the cause of action that must arise from the contacts." *Talegen v. Signet*, 104 Md.App. 663, 665, 657 A.2d 406 (1995).

In the present case, we must focus on appellant's nonresident clients' contacts with Maryland. As appellant sees it, her clients "personally conduct business, perform, play, train, conduct meetings, and attend promotional appearances in the State of Maryland." Unfortunately for appellant, appellees' only contacts with Maryland are because they are members of the Team. To be sure, when engaged in a contest in the Washington, D.C. area, the Team is ordinarily quartered and practices in the Maryland suburbs. In other words, the appellees appear wherever the Team's schedule takes them, be it Maryland or Timbuktu.

Although the appellees contacted appellant to obtain her professional services, it was because her name appeared on a list of lawyers willing to perform such services for female athletes and not because she was a Maryland lawyer (see fn. 1, supra). In fact, appellees had little or no negotiations with appellant. She simply prepared, mailed, or faxed proposed personal management agreements to each appellee, and each appellee executed and mailed or faxed the agreement to appellant. The appellees did not visit Maryland for purposes of receiving appellant's services. Although appellant's suit claims unpaid invoices, this means only that appellant has not received a check from California, North Carolina, or Connecticut.

Appellant's reliance on *Jason Pharmaceuticals, Inc. v. Jianas Bros. Packaging Co., Inc.*, 94 Md.App. 425, 617 A.2d 1125 (1993) is misplaced. The *Jason* Court found sufficient evidence of purposeful activity by the nonresident defendant, who had initiated contact with the plaintiff, participated in "several weeks of negotiation with appellant . . . entered into a $700,-

000 contract ... with appellant in Maryland; and sent a down payment of $35,000 into Maryland." *Id.* at 433–34, 617 A.2d 1125. Here, appellees had no such contacts with Maryland. There was no "extensive negotiation" between appellant and the appellees, the personal management agreements were neither formed, examined, nor executed by appellees in Maryland, nor did they constitute transacting business in Maryland.

Not only have appellees not had sufficient contact with Maryland to subject them to Maryland's long arm statute, appellees did not purposely seek a Maryland agent, endorsements of Maryland companies, or advertisements directed to Maryland soccer fans. The appellees' contact with Maryland is simply because appellant is a Maryland lawyer whose name appeared on a list of lawyers willing to perform services such as those sought by the appellees for female athletes. Simply put, appellees did not purposely engage in adequate activities in Maryland to avail them either of the benefits or the protection of Maryland law.

## IV.

Lastly, appellant contends it was reversible error for the trial court to grant appellees' Motion to Dismiss without considering evidence in the light most favorable to appellant. It was error for the trial court to say there were "simply too many disputed facts surrounding this matter to support a finding of jurisdiction given that the supporting affidavits are at odds," but it was harmless error. Had the trial court viewed the facts in the light most favorable to appellant, the result would have been the same.

Accordingly, we shall affirm the judgment of the circuit court.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**