790 A.2d 720

**KONOVER PROPERTY TRUST, INC.**

v.

**WHE ASSOCIATES, INC.**

**No. 2851, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Feb. 1, 2002.

478

Rebecca Lambreth (Kelly C. Wilcove, Alston & Bird, LLP, Atlanta, GA, James E. Gray, Michael B. MacWilliams and

Venable, Baetjer and Howard, LLP, Baltimore, on the brief), for appellant.

Neil J. Dilloff (Tracey Gann Turner, Michael C. Hanlon and Piper, Marbury, Rudnick & Wolfe LLP, on the brief), Baltimore, for appellee.

Argued before KRAUSER, ROBERT E. CAHILL, SR. (Specially Assigned), and RAYMOND G. THIEME, JR. (Ret'd, Specially Assigned), JJ.

RAYMOND G. THIEME, JR., Judge, Ret'd, Specially Assigned.

Appellee WHE Associates, Inc. (WHE) filed suit against appellant Konover Property Trust, Inc. (Konover), claiming that it was entitled to a finder's fee of an amount between $2,000,000.00 and $4,000,000.00 for introducing Konover to Lazard Freres Real Estate Investors, LLC (Lazard), an investment firm, that ultimately invested $200,000,000.00 in Konover. At trial, the theories of recovery asserted by WHE were based in equity, as there never existed a written contract between the parties. The jury returned a verdict for damages in favor of WHE, and the Circuit Court for Baltimore City subsequently entered judgment for WHE in the amount of $2,756,550.00 against Konover. Konover appeals from that decision and presents the following questions for our review:

1. Did the trial court err in entering summary judgment in favor of WHE, notwithstanding an erroneous entry of partial summary judgment in favor of WHE prior to trial, leaving only the issue of damages to be tried?

2. Did the trial court err in applying the substantive law of Maryland, because WHE's claims are governed by the substantive law of New York, and, if not, by the substantive law of North Carolina?

3. Did the trial court err in entering judgment in favor of WHE instead of Konover, because WHE's claim for a finder's fee is barred as a matter of law based on New York's applicable statute of frauds and broker licensing provisions?

4.  Did the trial court err in entering judgment on WHE's Count V (detrimental reliance/promissory estoppel) because it lacked any evidentiary support?

5.  Did the trial court err in instructing the jury on the Maryland law of detrimental reliance/promissory estoppel, and did so in a way that wrongly equated that claim with WHE's dismissed implied contract claim?

6.  Did the trial court err in entering judgment on WHE's claim for pre-judgment interest because WHE waived such claim by failing to plead it as a component of its claimed damages in its complaint or otherwise?

7.  Did the trial court err in denying Konover's motion for judgment notwithstanding the verdict and motion for new trial, which raised the above enumerations of error?

We reverse the granting of summary judgment on detrimental reliance/promissory estoppel. The remaining judgments are affirmed.

## Facts and Proceedings

Konover, a real estate investment trust engaged in the development, acquisition, leasing, management, and marketing of shopping centers, was attempting to raise equity capital.[1] A business relationship of some type existed between William H. Elliott, the President of WHE, and C. Cammack Morton, the Chief Executive Officer and President of Konover. Konover apparently was having difficulty raising the equity capital it sought, and therefore Elliott and Morton spoke about this issue on several occasions.

They met in North Carolina in September of 1997, at which time Lazard was pointed out as a potential source for capital. Elliott informed Morton that he knew principals at Lazard. He asked Morton for permission to contact Lazard on behalf of Konover. Morton expressly authorized Elliott to explore whether Lazard would be interested in investing in Konover.

---

1.  Corporate capital is raised through the sale of stock, i.e. equity capital or through borrowing i.e. debt capital.

At trial, Morton testified that he understood Elliott's role as that of a "finder and introducer. To be finder, in fact.... Someone who introduces two people, who then take on the obligation of putting a deal together."

Elliott subsequently arranged for a three-way telephone conference between himself, Morton, and a Lazard representative, at which time the introduction was made. This introduction eventually led to an agreement between Konover and Lazard in which Lazard agreed to invest $200,000,000.00 in Konover. Although Elliott expected to be compensated for acting as the finder, Konover never compensated Elliott for such. On several occasions Elliott requested that the fee agreement for his services as the finder be put in writing. Konover repeatedly insisted that this was unnecessary, and consistently reassured Elliott that he would be compensated. WHE eventually filed suit for recovery of a fee for Elliott's services as the finder.

WHE initially filed suit in the United District Court for the Central District of California, but that court dismissed the case, finding that Konover was not subject to personal jurisdiction in California. WHE subsequently filed its suit in the Circuit Court for Baltimore City, alleging breach of contract, breach of implied contract, unjust enrichment, *quantum meruit*, and detrimental reliance/promissory estoppel. Contemporaneously with the filing of its Complaint, WHE moved for partial summary judgment on the issue of liability. The circuit court granted WHE's motion regarding its claims for unjust enrichment, quantum meruit, and detrimental reliance/promissory estoppel. Thereafter, Konover moved for summary judgment, arguing that WHE's claims were barred by the statute of frauds of New York, and by real estate and securities licensing statutes of New York, North Carolina, and Maryland. The circuit court denied Konover's motion, and the case proceeded to jury trial.

Before opening statements, WHE voluntarily dismissed its claims regarding breach of contract and breach of implied contract, so the only issue remaining at trial was damages on

WHE's equitable claims, as the issue of liability on those claims had already been decided pursuant to the prior partial summary judgment. During trial Konover urged the trial court to revisit the earlier summary judgment ruling concerning choice of substantive law. The trial court denied any reprise, and the jury was instructed on Maryland law relating to WHE's equitable claims.

At the conclusion of trial, the jury awarded WHE damages in the following amounts: $1,275,000.00, plus $206,550.00 in prejudgment interest, on the unjust enrichment claim; $1,275,000.00, plus $206,550.00 in prejudgment interest, on the *quantum meruit* claim; and $2,550,000.00, plus $206,550.00 in prejudgment interest, on the detrimental reliance/promissory estoppel claim. The trial court entered judgment on the verdict in the total amount of $2,756,550.00. Konover moved for judgment notwithstanding the verdict and a new trial. Following oral arguments the trial court denied these motions. This appeal followed.

## Discussion

Konover appeals from the following judgments: entry of partial summary judgment in favor of WHE on the issue of liability; the denial of Konover's motion for summary judgment; the amounts of the jury verdicts; and the trial court's denial of its post-trial motions. Konover's various grounds for appeal are in large part interwoven, essentially having as their schwerpunkt the issue of choice of law.

We turn first to Konover's contention that the trial court erred in granting partial summary judgment on the issue of liability under WHE's claims for equitable relief.[2] We find that the trial court ruled correctly on the claims based on unjust enrichment and quantum meruit, but reverse its decision on the detrimental reliance/promissory estoppel claim.

---

2. We note that oftentimes throughout this opinion we will refer to a lower court involved in this case as the trial court, although some of the rulings in this case were entered by various courts prior to trial. This has been done for convenience and clarity, as it usually is unnecessary to distinguish exactly which court made the subject ruling.

*Standard for Summary Judgment*

The trial court, in accordance with Maryland Rule 2–501(e), shall grant a motion for summary judgment if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law. In reviewing the grant of a summary judgment motion, we are concerned with whether a dispute of material fact exists.

*Jones v. Mid–Atlantic Funding Co.,* 362 Md. 661, 675, 766 A.2d 617 (2001) (citations and internal quotation marks omitted).

The standard for appellate review of a trial court's grant of summary judgment is whether the trial judge was legally correct in his or her rulings. In granting a motion for summary judgment, the trial judge may not resolve factual disputes, but instead is limited to ruling on matters of law.

*Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118 (2000).

*Detrimental Reliance/Promissory Estoppel*

Konover contends that the trial court erred by granting summary judgment in favor of WHE on its detrimental reliance/promissory estoppel claim.[3] We agree. Moreover, we shall direct the circuit court instead to grant summary judgment on this issue in favor of Konover. In *Pavel Enterprises, Inc. v. A.S. Johnson Co., Inc.,* 342 Md. 143, 166, 674 A.2d 521 (1996), the Court of Appeals brightened the long shadows cast by this confusion and recognized that courts were using dissimilar paradigms in determining the applicability of this

---

**3.** In *Pavel,* the Court of Appeals noted that the terms detrimental reliance and promissory estoppel were interchangeable, but that it preferred using the term detrimental reliance because it more clearly expresses the concept intended. 342 Md. at 146 n. 1, 674 A.2d 521. As is often done with these terms, the parties to this appeal have combined them, referring to this cause of action as detrimental reliance/promissory estoppel. Although cognizant that this usage is prolixt, for the sake of continuity we will continue to refer to the terms in this collective fashion.

theory of recovery. It clearly set forth the law in Maryland pertaining to this cause of action, stating:

> To resolve these confusions we now clarify that Maryland courts are to apply the test of the Restatement (Second) of Contracts 90(1) (1979), which we have recast as a four-part test:
>
> 1. a clear and definite promise;
>
> 2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;
>
> 3. which does induce actual and reasonable action or forbearance by the promisee; and
>
> 4. causes a detriment which can only be avoided by the enforcement of the promise.

■ We find that the allegations by WHE did not sufficiently establish a clear and definite promise so as to permit recovery under this theory. At best, there was an implied understanding or an implied agreement. That is quite dissimilar from a clear and definite promise. The evidence illustrates that Morton never made a promise to Elliott regarding any type of compensation for his service as a finder. Whether Morton gave Elliott express permission to contact Lazard on Konover's behalf is of no moment in this analysis—the threshold question here is whether there was a clear and definite promise.

In pertinent part, WHE sets forth the following facts in support of its contention that it is entitled to recovery under detrimental reliance/promissory estoppel:

> Elliott informed Morton that he knew principals in the real estate group at Lazard. Elliott expressly asked Morton for permission to contact Lazard on Konover's behalf. Morton expressly authorized Elliott to approach Lazard on Konover's behalf to explore the possibility of Lazard investing in Konover.... Morton understood that Elliott and WHE would be acting as a finder.

WHE states, "[r]elying upon Morton's express authorization, Elliott ... spoke by telephone to a contact at Lazard in October 1997, to introduce the idea of Lazard making an investment in Konover." In response to this assertion, it is significant to point out that Elliott relied not on a promise of compensation from Morton, but rather on express authorization to contact Lazard on Konover's behalf. WHE is contending that Elliott was acting in reliance upon something said by Morton. That becomes irrelevant, however, as the something being relied upon was not a promise of any sort, and certainly not a clear and definite promise. Rather, it was simply permission or authorization, and not sufficient for a satisfaction of the first prong of the test.

It is true that Morton eventually informed Elliott that he would be compensated for his services as finder, but Morton only made such promises *after* Elliott had already performed that service. WHE does not contend that Morton actually promised Elliott that he would be compensated for these actions *before* Elliott actually performed. Therefore, it cannot be said that Elliott relied on such promises or statements in performing his service as finder. It was in a meeting between Morton and Elliott in September of 1997 that they discussed authorization for Elliott to approach Lazard. Elliott then arranged the introduction by telephone, which took place in October of 1997. The agreement eventually entered into between Konover and Lazard took place on February 24, 1998. It is important to bear in mind, before we flounder in a morass of detail, the chronology of these various stages of the developments in this case. Any understanding that took place between Konover and WHE occurred, if at all, in September of 1997. Any services performed by Elliott as finder culminated in October of 1997, the time he made the telephone introduction between Konover and Lazard. Once this telephone conversation took place, Elliott's role as finder essentially was complete. The agreement reached between Konover and Lazard occurred after Elliott had already performed his role as finder, and therefore is not to be considered in any analysis concerning detrimental reliance/promissory estoppel.

The latest time whereby any service performed by Elliott as finder could have occurred in reliance upon any action by Morton would have been by the time of the introduction.

With this time line as the polestar in our eye, we continue to assess the claims by WHE relating to this theory of recovery. WHE directs our attention to several discussions that occurred between Elliott and Morton in December of 1997 and continually during the next several months thereafter. WHE claims that during that time Morton assured Elliott that he would be pleased with WHE'S compensation in connection with the Lazard transaction. Referring to our time line, however, we observe that these discussions occurred after Elliott's role as finder essentially had ended. WHE points out that Elliott was still advising Konover at that time with respect to the details of the proposed transaction that would be taking place between Konover and Lazard. Such advice provided by Elliott at that time plays no role in our finding on this claim, however, as it is very clear that WHE is seeking compensation for Elliott's services in the introduction between Konover and Lazard. Any advice provided by Elliott after that introduction is not pertinent in this determination. WHE finds it significant that Konover has consistently admitted its willingness to pay WHE a reasonable fee for Elliott's services as finder. Konover does not dispute this, and in fact made it clear to WHE on several occasions that it was willing to pay WHE a finder's fee of $250,000.00. Once again, however, this has no bearing on whether Elliott relied on a clear and definite promise made by Morton. Konover's willingness to pay a finder's fee *after* Elliott had already acted as a finder is of no moment and does not demonstrate in any manner a promise made by Konover on which Elliott relied to his detriment. Elliott's actions as finder had been carried out prior to any assurances by Konover as to payment of a finder's fee.

WHE has failed to satisfy the first prong of the four-part test for recovery under detrimental reliance/promissory estoppel as set forth by the Court of Appeals. Accordingly, silence is most melodious on the remaining three prongs of the test.

WHE has not demonstrated the applicability of detrimental reliance/promissory estoppel in these circumstances. Therefore, the trial court was incorrect in granting summary judgment in favor of WHE on this claim, and, in turn, we reverse that judgment. Litigation on this claim need not continue, however, as we direct the circuit court to grant summary judgment in favor of Konover on this issue. Taking the evidence presented by WHE on this issue, together with all reasonable inferences that can be made in support thereof, we find that WHE has failed to demonstrate that it is entitled to go to trial on this claim.

In sum, we reverse the granting of summary judgment by the trial court in favor of WHE on detrimental reliance/promissory estoppel, and we remand to the trial court to enter summary judgment in favor of Konover on this claim. We note that in light of this ruling we need not discuss Konover's contentions regarding the proper method of computing damages under detrimental reliance/promissory estoppel and regarding the jury instructions given by the trial court on this count.

### Unjust Enrichment and Quantum Meruit

Konover contends that the trial court prematurely granted WHE's motion for summary judgment on its unjust enrichment claim. It argues that it was not given ample opportunity to conduct discovery essential to a full and fair analysis of WHE'S claims. It also propounds this argument as to the granting of summary judgment on WHE'S *quantum meruit* claim.[4] Although we would generally discuss these claims separately, we discuss the unjust enrichment and *quantum meruit* claims together, given the arguments set forth by Konover.

---

4. Konover also argued this point regarding the granting of summary judgment in favor of WHE on the detrimental reliance/promissory estoppel claim. We find it unnecessary to consider Konover's claim of prematurity as to that Count, however, as we have already reversed the trial court's granting of summary judgment on that Count. *See supra.*

We find no merit to this assertion by Konover for either unjust enrichment or quantum meruit. Based on our review of the record we find that there was no additional evidence or information of any type presented at any time during the relevant proceedings that would have precluded Konover from falling prey to a granting of summary judgment on these issues either at the time the summary judgment was granted or at any later time during the development of this case. Konover was unable to unearth evidence to oppose successfully this result on these claims not because it was too early at that time, but simply because it had no defense to the claims.

Konover maintains that the granting of summary judgment on these grounds was erroneous because subsequently discovered undisputed evidence established multiple legal bars to each of WHE'S claims. We note that these subsequently discovered bars to recovery claimed by Konover were the subject of its motion for summary judgment that was denied. As we stated earlier, Konover appeals that finding as well. Because Konover's arguments are intertwined, we will address both the granting of WHE'S summary judgment and the denial of Konover's summary judgment here.

We are unpersuaded by Konover's contentions for several reasons. WHE's summary judgment was granted on January 5, 2000. The judge who entered that judgment was not the judge who presided at trial. At trial, Konover urged the trial judge to revisit the earlier granting of summary judgment. Konover claims that the trial judge felt himself constrained by the prior entry of partial summary judgment and refused to take up the issue anew. We disagree. Our review of the record indicates that the trial judge did not disturb the earlier granting of summary judgment not because he felt constrained by its ruling, but rather because he agreed with it. In any event, it is irrelevant at this point what reasoning the trial judge used to abide by the earlier granting of summary judgment. We find that the initial motions judge was legally correct in his granting of summary judgment on the unjust enrichment and *quantum meruit* counts.

█ Konover has failed to demonstrate to this Court any basis for disturbing the granting of summary judgment on WHE's claims of unjust enrichment and *quantum meruit*. As we have said, Konover's contention is premised upon its insistence that summary judgment was granted too early in the proceedings. Konover must demonstrate that the outcome would have been different later in the game for us to conclude that the trial court erred in granting summary judgment prematurely. This it has not done. It argues that several bars to WHE'S claims arose during litigation. We note that any such bars, which we soon will discuss, could and should have been argued by Konover at the outset. Information regarding these potential bars was available to Konover from the beginning, and its failure to argue those points cannot contravene those judgments. More significantly, we disagree with Konover, as we do not think that the reasons it sets forth in fact bar WHE's recovery on these claims.

The primary underlying premise to Konover's claim that summary judgment was entered prematurely involves the issue of choice of laws. It is understandable that much drudgery of the law was spent on this major issue, and we certainly understand why it was a cause for great concern here, but we find any discussion as to choice of laws in this case to be an extremely guileful red herring tossed on the ground to destroy the scent and set us at fault. It is undisputed that the trial judge applied Maryland law to the issues in this case. Konover maintains that this was error, arguing that New York law should have been applied. In the alternative, it says that North Carolina law should have been used if New York was not the correct choice of law.

We find that, based on the factual circumstances that took place here, New York law does not represent the appropriate choice in this matter. We find that North Carolina would have been the correct choice of law to be applied in this case, but that the trial court's application of Maryland law instead, although technically incorrect, did not result in a different outcome for the unjust enrichment and *quantum meruit* claims. Although the choice of law may have affected the

detrimental reliance/promissory estoppel claim in Konover's favor, it is unnecessary to consider that point in light of our reversal on that issue. Therefore, we do not disturb the decision by the trial court to apply Maryland law, and we find no merit to Konover's claims regarding the choice of law issue.

■ In *American Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 569 659 A.2d 1295 (1995), the Court of Appeals said: "[A]bsent a choice-of-law provision in the contract, our courts have applied the rule of *lex loci contractus* to matters regarding the validity and interpretation of contract provisions." *Id.* at 573, 659 A.2d 1295. This Court has said: "When determining which law controls the enforceability and effect of a contract, this Court generally applies the principle of *lex loci contractus.* Under this principle, the law of the jurisdiction where the contract was made controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390, 535 A.2d 466 (1988). For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs. *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md.App. 605, 672, 698 A.2d 1167 (1997).

We have recognized an exception to the application of *lex loci contractus* when application of a foreign jurisdiction's law would be contrary to a strong public policy of this State. *American Motorists Ins. Co.*, 338 Md. at 573, 659 A.2d 1295. But, for Maryland public policy to override the *lex loci contractus* rule, the public policy must be very strong and not merely a situation in which Maryland law is different from the law of another jurisdiction. *Kramer*, 311 Md. at 390, 535 A.2d 466.

■ In the case at bar, it is undisputed that no contract existed, and therefore obviously no choice-of-law provision is applicable. Additionally, there was no indication, nor has it been argued, that application of *lex loci contractus* in this case is contrary to a strong public policy in this State. Thus, we perceive no justification to veer from the established law of our State in this regard. There exists no doubt that North

Carolina is the State in which the alleged contract was made. Konover maintains, however, that New York law should have been applied, arguing:

> the last act necessary to give rise to any obligation on Konover's part to compensate WHE ... was Lazard's participation in the deal by which it agreed to invest in Konover. By all accounts, Lazard, headquartered in New York, operating in New York, and originally contacted by Elliott in New York committed to the investment deal in New York.

This argument by Konover is not convincing. It misstates the law on point and focuses on the wrong part of the time line. The law, as we have stated above, looks to the place the contract was made and to the last act necessary to make that contract binding. Konover, however, is placing unsuitable emphasis on conduct by Lazard, although the subject of this action is a claimed contract for a finder's fee between WHE and Konover. Any agreement between these parties concerning a finder's fee took place when Elliott and Morton met in North Carolina in September of 1997. If Konover ever committed itself to paying WHE a finder's fee, it did so during that meeting. Whether it then became obligated to pay that fee based on subsequent actions is irrelevant here.

Certainly, we agree with Konover that any issue regarding the finder's fee would be moot had Lazard not eventually agreed to invest the money in Konover. Nonetheless, such action by Lazard was not the last act necessary to make the agreement between WHE and Konover binding. It was binding, if at all, at the time the parties discussed it. Lazard was not a party to any contract or agreement concerning a finder's fee between WHE and Konover, and therefore it is specious to consider any actions by it in making this determination. As we have stated, the applicable law looks to the place the contract was *made*. The contract existed between WHE and Konover, and was made in North Carolina during a meeting between Elliott and Morton. Konover muddles the issue by looking beyond this point and focusing instead on the performance of the contract; Konover focuses on the time in which

it became responsible for payment of the finder's fee. That is not the proper focus in this analysis, as Lazard plays a meaningless role in our determination as to choice of law.

Moreover, to the extent that Konover emphasizes Lazard's contacts with New York, such consideration is dismissed as well. *As we have set forth, the proper test to be used in determining choice of law in Maryland looks to the place the contract was made and not to factors concerning the type of relationships litigants have with any given State.* Konover also suggests that we consider not applying *lex loci contractus* to this case because it is difficult to ascertain precisely the last action necessary to make a contract binding in a quasi-contractual setting such as the one here. We disagree. We have applied *lex loci contractus* to the facts of this case. We perceive no difficulty occurring as a result. Having found that New York law is inapplicable in this action, any bars to recovery by WHE based on New York law are of no consequence.

■ Konover contends that several licensure laws preclude WHE from recovery. Again we disagree. We find these suggested licensure laws inapplicable under these circumstances. Konover discusses licensure laws pertaining to real estate and securities. Neither is applicable here. Elliott's actions for which WHE now seeks compensation involved introducing Konover to Lazard so that Konover could raise capital. It is true that Konover's business involves real estate, but the agreement between Elliott and Morton did not concern real estate in any manner. Likewise, although securities may have been involved between Konover and Lazard, none were involved in the agreement between Konover and WHE. In the labyrinth of facts, relevance is often choked. We find no merit to these contentions.

We turn to address Konover's remaining contentions pertaining to choice of law. It points out that the statute of frauds of New York would bar recovery for WHE's equitable claims. We need only respond that each answer previously given becomes a rule which afterwards serves to solve subse-

quent issues. We have already determined that New York law does not apply in this case, and therefore its statute of frauds is inapplicable. Konover also argues that WHE'S detrimental reliance/promissory estoppel claim is barred under North Carolina law. We need not consider this point, however, as we have already found that WHE is not entitled to recover on that count, regardless of what State's laws are applied. We conclude that whether it was incorrect to apply Maryland law to the issues in this case is immaterial at this point. Konover has failed to demonstrate how any finding would be different, aside from the law on detrimental reliance/promissory estoppel, had North Carolina law been applied instead of Maryland law. Therefore we find that any error by the trial court in applying Maryland law was harmless. *Zavian v. Foudy*, 130 Md.App. 689, 702, 747 A.2d 764 (2000).

We have discussed Konover's contentions regarding WHE'S claims for relief. We have determined that summary judgment should not have been entered on the detrimental reliance/promissory estoppel claim, but that it was properly granted as to the unjust enrichment and *quantum meruit* claims. Konover maintained that WHE had failed to demonstrate sufficient information to support recovery under detrimental reliance/promissory estoppel, irrespective of whether bars to that recovery existed. We agreed. Konover disputes the trial court's findings regarding unjust enrichment and quantum meruit based on the bars to recovery it claims exist. We have discussed those potential bars, and we have found no merit to these arguments. Konover does not attack whether the elements of unjust enrichment and *quantum meruit* have been proven, but rather only attacks these claims based on the bars it believes to exist. Having disposed of Konover's arguments as to these potential bars, we need not discuss further the findings of unjust enrichment and quantum meruit. Suffice it to say that we find the granting of summary judgment on those counts to be legally correct. Upon our review of the record, we have discovered no evidence that would have called for a different ruling on those counts later in litigation.

Consequently, there is no merit to Konover's assertion regarding the prematurity of those motions. We therefore affirm the judgments by the trial court as to those claims.

## Prejudgment Interest

Konover disputes the prejudgment interest awarded to WHE on three grounds. It asserts that WHE failed adequately to raise the issue before trial and therefore should not have been granted prejudgment interest in any amount. It also takes issue with the determination by the trial judge regarding a specific date from which to begin accruing prejudgment interest. Finally, Konover argues that the jury's finding as to the amount of prejudgment interest awarded on the various counts were irreconcilable, and therefore should be vacated. We shall address these arguments in turn.

■ We find no merit to Konover's assertion concerning WHE's failure to plead properly on the issue of prejudgment interest. Konover has directed us to no relevant law in support of this claim. We will not rummage in a dark cellar for coal that isn't there. It is not this Court's responsibility to attempt to fashion coherent legal theories to support appellant's sweeping claims. *Electronics Store v. Cellco Pshp.*, 127 Md.App. 385, 405, 732 A.2d 980 (1999). We find no reason to unhinge the ruling by the trial court regarding WHE's entitlement to prejudgment interest.

■ Next, Konover complains that the trial judge erred in selecting a date from which the prejudgment interest was to be calculated, asserting that this determination instead was for the jury to make. The pertinent jury instruction given by the trial judge provided:

You will hear or see ... that the starting date ... would be from February 24th, 1998, until the day of today. I only say that to you and underscoring it because what is being said in that is the finding that activities pointed to the day that that agreement occurred. While, in fact, is that Mr. Elliott was not in New York when the agreement was signed, that agreement was signed, and as a matter of law,

the courts have concluded that his activities, actions did, in fact, cause and work toward that occurring, and that is what we're looking at. So the date, if such, is at contracting amount between Konover and Lazard, who invested the 200 million dollars into that of Konover Property Trust, Inc.

We need not decide whether the trial judge made this decision in error, because we think that any such error is harmless in any event. *Zavian,* 130 Md.App. at 702, 747 A.2d 764. This was the date the agreement was reached between Konover and Lazard. WHE contends that it became entitled to payment by Konover once Konover reached its agreement with Lazard. Although the agreement between Konover and WHE was binding in September of 1997, at the time it was reached, WHE was not entitled to any payment until an agreement was reached between Konover and Lazard. WHE first was entitled to compensation from Konover on the date of the agreement between Konover and Lazard. This is simply commonsensical, and the trial judge did not err by establishing that as the date for purposes of calculating prejudgment interest.

Even if there was error in this determination, Konover cannot demonstrate that it was prejudiced as a result. Although it is extremely unlikely, the jury potentially could have incorrectly used an earlier date for this calculation, which would have resulted in a larger amount of prejudgment interest. The jury may have applied by mistake the date of the agreement between WHE and Konover, in September of 1997. That occurred several months prior to the date applied by the trial judge, and therefore its application would have resulted in a larger amount of prejudgment interest. The date of the agreement between WHE and Konover was relevant for other determinations in this case, specifically as to when such agreement became binding, but the date of the agreement between Konover and Lazard was the critical time pertaining to the calculation of prejudgment interest.

Konover points out that the jury's awards of $206,550.00 as prejudgment interest for each of the three counts were irrec-

oncilable. The jury awarded WHE $1,275,000.00 in damages for unjust enrichment, $1,275,000.00 in damages for quantum meruit, and $2,550,000.00 in damages for detrimental reliance/promissory estoppel. Additionally, the jury found that WHE was entitled to an award for prejudgment interest on each of these counts, awarding WHE prejudgment interest of $206,550.00 on each count. The interest was calculated based on a fixed interest rate, applied to each damage award for the period covering February 24, 1998, until trial. The base amount awarded for damages on the detrimental reliance/promissory estoppel claim is double the amount awarded for each of the other two claims. It follows, therefore, that the prejudgment interest awarded for the detrimental reliance/promissory estoppel claim should also have been double the amount awarded for prejudgment interest awarded on the other counts, as the calculation as to prejudgment interest on each count was determined applying precisely the same interest rate and applicable dates. The prejudgment interest as to detrimental reliance/promissory estoppel was identical to the prejudgment interest awarded for the other claims. There is no documentation in the record, however, concerning the reason for this irreconcilable result.

The prejudgment interest awards for the unjust enrichment and quantum meruit claims are correct. Only the prejudgment interest award for the detrimental reliance/promissory estoppel claim would be in need of adjustment. That adjustment is not necessary, however, in light of our finding, *supra*, where we vacated any award for detrimental reliance/promissory estoppel in its entirety.

### Conclusion

We reverse the granting of summary judgment on the detrimental reliance/promissory estoppel count. We have noted a few other errors by the trial court, but those errors are insignificant in light of our reversal on the detrimental reliance/promissory estoppel claim. The remaining judgments by the trial court are affirmed. We find no need to discuss Konover's post-trial motions because we have thoroughly dis-

cussed the issues raised therein in regard to the other judgments we reviewed. We are aware that the trial court subsequently reduced the jury awards in favor of WHE. Bearing that in mind, we leave it to the trial court to determine the effect on the total judgment given our reversal on the detrimental reliance/promissory estoppel issue.

Before concluding, we point out an additional issue, although it was not raised by the parties. We have affirmed damages awarded to WHE under the theories of unjust enrichment and *quantum meruit.* The reality appears to be, however, that WHE's damages under each of those equitable theories are in essence the same, and, therefore a separate award of damages under each theory has caused a duplication of damages. Accordingly, the trial court shall reduce the amount of its judgment to reflect this finding.

**JUDGMENTS AFFIRMED, WITH THE EXCEPTION OF THE GRANTING OF SUMMARY JUDGMENT IN FAVOR OF WHE ON DETRIMENTAL RELIANCE/- PROMISSORY ESTOPPEL. THAT JUDGMENT IS VACATED, WITH INSTRUCTIONS TO THE CIRCUIT COURT TO ENTER SUMMARY JUDGMENT IN FAVOR OF KONOVER ON THAT ISSUE.**

**CASE REMANDED TO CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID TWO THIRDS BY APPELLANT AND ONE THIRD BY APPELLEE.**