**DAVIS KIDD BOOKSELLERS, INC., Linda Roberts, d/b/a Private Edition, and Graces, Inc., Plaintiffs/Appellees,**

**v.**

**DAY–IMPEX, LTD. and Sprinkler Bulb, Inc., Defendants/Appellants,**

**and**

**Nashville Sprinkler Company, Firematic Sprinkler Device, Inc., and D.F. Chase, Inc., Defendants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

March 20, 1992.

Permission to Appeal Denied by Supreme Court June 8, 1992.

W.W. McNeilly, Jr., Watkins, McGugin, McNeilly & Rowan, Nashville, for defendant/appellant Sprinkler Bulb, Inc.

J. Mark Tipps, Bass, Berry & Sims, Nashville, for defendant/appellant Day–Impex, Ltd.

David C. Rutherford, Rutherford, De-Marco & White, Nashville, for plaintiffs/appellees Davis Kidd Booksellers, Inc. and Graces, Inc.

Fred L. Allen, Franklin, for plaintiff/appellee Linda Roberts, d/b/a Private Edition.

## OPINION

KOCH, Judge.

This interlocutory appeal arises from the First Circuit Court for Davidson County's assertion of jurisdiction over two non-resident defendants. The trial court, apparently relying on *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), determined that

both defendants have sufficient contacts with Tennessee because one of them had entered into an agreement to market the other's products in the United States. We concur that an interlocutory appeal is warranted in this case, and we also find that further briefing and argument is unnecessary because the facts are undisputed and because the application and response thereto fully set out the parties' respective positions.[1] We have determined that the trial court should not have asserted personal jurisdiction over these two defendants.

## I.

Sometime between the evening of September 18, 1988 and the next morning, a single fire sprinkler head burst on the second floor of Davis Kidd Booksellers, Inc.'s ("Davis Kidd") store in Graces Plaza in Green Hills. The water streamed into the store undetected for twelve hours because Davis Kidd was closed for the weekend. By the time the leak was discovered, the water had caused extensive damage not only to Davis Kidd but also to Private Edition, a cosmetics store located directly below a portion of Davis Kidd's store.

Davis Kidd and Private Edition determined that the sprinkler head had failed because of a defective glass bulb that was a component part of the head itself. In March, 1990, they[2] filed suit in the Circuit Court for Davidson County against D.F. Chase, Inc. ("Chase"), the Tennessee contractor who built Davis Kidd's store; Nashville Sprinkler Company ("Nashville Sprinkler"), the subcontractor who supplied and installed the sprinkler system; and Firematic Sprinkler Device, Inc. ("Firematic"), the Massachusetts supplier of the sprinkler heads. They also sued a Pennsylvania corporation named Sprinkler Bulb, Inc. ("Sprinkler Bulb"), believing that Sprinkler Bulb had manufactured the glass bulbs used in Firematic's sprinkler heads.

The plaintiffs learned later that a British company named Day–Impex, Ltd. ("Day–Impex"), not Sprinkler Bulb, had manufactured the glass bulb. Sprinkler Bulb was Day–Impex's exclusive United States distributor by virtue of a 1983 "supply and license agreement." Under this agreement, Day–Impex manufactured glass bulbs in England and shipped them in sealed packages to Sprinkler Bulb in Pennsylvania. Sprinkler Bulb, in turn, sold and shipped the bulbs in their unopened containers to Firematic and other customers.

Armed with this new information, Davis Kidd, Private Edition, and Graces, Inc. amended their complaint to add Day–Impex as a defendant. Both Day–Impex and Sprinkler Bulb later filed Tenn.R.Civ.P. 12.-02(2) motions to dismiss for lack of personal jurisdiction. The trial court denied the motions but permitted Day–Impex and Sprinkler Bulb to pursue this interlocutory appeal.

## II.

This appeal concerns the circumstances when Tennessee courts may exercise personal jurisdiction over non-resident defendants pursuant to the long-arm statute, Tenn.Code Ann. § 20-2-214 (Supp.1991). Both the trial court and the parties view this case as an opportunity for this court to depart from the traditional "minimum contacts" analysis and to embrace some version of the "stream of commerce" analysis discussed but not adopted in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). We decline the invitation. The United States Supreme Court itself cannot agree on a stream of commerce test, and this appeal can be decided using the test traditionally followed in Tennessee.

## A.

Following the United States Supreme Court's lead, the Tennessee Supreme Court has held that

1. In our order directing the preparation of the appellate record, we invited the parties to inform the court of their desire to file additional briefs or to present oral argument. Since neither party has requested further briefing or oral argument, we suspend the requirements of Tenn.R.App.P. 9(e), 29, and 35 with regard to further briefing or oral argument. *See* Tenn. R.App.P. 2, 35(c).

2. Graces, Inc. later joined Davis Kidd and Private Edition as a plaintiff.

a non-resident defendant [may] be subjected to a judgment *in personam* only if he has minimum contacts with the forum such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

*Masada Inv. Corp. v. Allen,* 697 S.W.2d 332, 334 (Tenn.1985). This test is commonly known as the "minimum contacts" test.

■ The minimum contacts test has two steps. First, it requires the court to identify the contacts between the non-resident and the forum. Second, it requires the court to determine whether exercising personal jurisdiction based on these contacts is consistent with traditional notions of fair play and substantial justice. Both steps call for a careful, not mechanical, analysis of the facts of each case with particular focus on the defendant, the forum, and the nature of the litigation. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984); *Roderick v. Roderick,* 776 S.W.2d 533, 535 (Tenn.Ct.App.1989).

■ The first step of the analysis is primarily a fact-gathering exercise. The second step involves some subjective value judgment by the court concerning the quality and nature of the defendant's contacts with the forum and the fair and orderly administration of the law. *Shelby Mut. Ins. Co. v. Moore,* 645 S.W.2d 242, 246 (Tenn.Ct.App.1982). The court's judgment should be informed by considering, among other matters: the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the state's shared interest in furthering fundamental, substantive social policies. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. at 113, 107 S.Ct. at 1033; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

## B.

■ The minimum contacts required for the exercise of personal jurisdiction can be established by showing that the defendant has "purposely direct[ed] his activities toward citizens of the forum state and litigation results from injuries arising out of or relating to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985); *Masada Inv. Corp. v. Allen,* 697 S.W.2d at 334. In *Asahi,* four members of the United States Supreme Court were of the opinion that placing a product into the stream of commerce, without more, was not an act purposely directed to a particular state. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. at 112, 107 S.Ct. at 1032. Four other members disagreed, stating that placing a product into the stream of commerce with the awareness that it would be marketed in the forum state was an act purposely directed toward the forum state. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. at 116–17, 107 S.Ct. at 1034–35 (Brennan, J., concurring in part and concurring in the judgment).

Even though the United States Supreme Court could not agree on the proper application of the stream of commerce rationale, a majority of the Court agreed upon a decision based on a more traditional minimum contacts analysis. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. at 113–16, 107 S.Ct. at 1033–34. In the process, four justices agreed that a nonresident defendant could be considered to have purposely directed its business activities toward a state if it "market[ed] the product through a distributor who has agreed to serve as a sales agent in the forum state." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. at 112, 107 S.Ct. at 1032. Seizing on this language, Davis Kidd, Private Edition, and Graces, Inc. insist that Day–Impex's national supply and license agreement with Sprinkler Bulb is the sort of distributor agreement that supplies the requisite affiliating circumstances with Tennessee. We disagree.

In 1983, Day–Impex entered into a ten-year supply and license agreement with Sprinkler Bulb.[3] The agreement, which was specifically governed by Pennsylvania law, gave Sprinkler Bulb the exclusive right to sell Day–Impex's glass bulbs in the United States and Canada. While the agreement was in effect, Sprinkler Bulb sold glass bulbs to seven customers in five states [4] and Canada.

The parties agree that Day–Impex and Sprinkler Bulb have never sold glass bulbs to anyone in Tennessee and that neither company has advertised, solicited orders, or maintained an office or employees in Tennessee. Day–Impex's and Sprinkler Bulb's employees have never travelled to Tennessee to solicit business, and neither company has had any other type of physical contact with Tennessee.

Day–Impex and Sprinkler Bulb had common shareholders, but there is no proof of any common ownership between Day–Impex, Sprinkler Bulb and Firematic. Likewise, there is no evidence that Day–Impex or Sprinkler Bulb controlled Firematic's marketing activities or even knew the identity of Firematic's customers.

Under these circumstances, Day–Impex's distribution agreement with Sprinkler Bulb is not the type of agreement contemplated by the *Asahi* court as providing a basis for exercising personal jurisdiction. While it gives Sprinkler Bulb the right to market glass bulbs throughout the United States, it does not mention Tennessee specifically. In the absence of any other conduct by Day–Impex or Sprinkler Bulb directed toward Tennessee, the nationwide distribution agreement is not evidence of a specific intent or purpose to serve the Tennessee market. Thus, if a Tennessee court is to exercise personal jurisdiction over Day–Impex or Sprinkler Bulb, it must point to affiliating circumstances in addition to the distribution agreement.

### C.

The parties have agreed that all the facts relevant to the jurisdictional issue

have been discovered and are before the court. Considering these facts in light of the traditional minimum contacts analysis, we find that the trial court should not have exercised personal jurisdiction over Day–Impex or Sprinkler Bulb.

Tennessee has some connection with the transaction that precipitated this lawsuit. The plaintiffs are Tennessee residents, and the property damage occurred in Tennessee. Thus, Davis Kidd, Private Edition, and Graces, Inc. have some interest in a convenient Tennessee forum for pursuing their claims, and Tennessee has a corresponding interest in providing a convenient forum for its residents. *See Shute v. Carnival Cruise Lines,* 897 F.2d 377, 387 (9th Cir.1990); *New Bern Pool & Supply Co.,* 94 N.C.App. 619, 381 S.E.2d 156, 160 (1989). However, these interests must be balanced against the other interests discussed in *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. at 113, 107 S.Ct. at 1033 and *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 292, 100 S.Ct. at 564.

Requiring Day–Impex and Sprinkler Bulb to defend themselves in Tennessee will be extremely burdensome to them. All the witnesses and documents concerning the manufacture of the glass bulb and the sprinkler head are not in Tennessee but rather in Massachusetts, Pennsylvania, and England. Similarly, the evidence concerning Day–Impex's and Sprinkler Bulb's dealings with each other and with Firematic is elsewhere.

Tennessee's courts can provide Davis Kidd, Private Edition, and Graces, Inc. a forum without exercising personal jurisdiction over Day–Impex or Sprinkler Bulb. The trial court already has jurisdiction over the contractor, the subcontractor who installed the sprinkler system, and the supplier of the allegedly defective sprinkler head. As long as these parties are before the court, Davis Kidd, Private Edition, and Graces, Inc. will be able to pursue their

---

**3.** The parties apparently agreed to terminate this agreement in 1990.

**4.** Massachusetts, Michigan, New York, Pennsylvania, and Rhode Island.

strict liability, negligence, and breach of warranty claims.[5]

■ If Davis Kidd, Private Edition, and Graces, Inc. obtain a judgment against any of the defendants, the State of Tennessee, like the State of California in *Asahi*, has little direct interest in the defendants'· indemnification action against Day–Impex and Sprinkler Bulb. State courts should exercise great care in asserting jurisdiction over alien defendants. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. at 115–16, 107 S.Ct. at 1034. The defendants can pursue their indemnification claims more appropriately, and perhaps more efficiently, in the federal courts or in the courts of Pennsylvania or Massachusetts.

### III.

■ Davis Kidd, Private Edition, and Graces, Inc. had the burden of making out a prima facie case that exercising personal jurisdiction under the long-arm statute over these defendants is proper. *Alameda Nat'l Bank v. Kanchanapoom*, 752 F.Supp. 367, 369 (D.Colo.1990); *World Metals, Inc. v. Townley Founry & Machine Co.*, 585 So.2d 1185, 1187 (Fla.Dist.Ct.App. 1991); *Catalano v. Lease & Rental Management Co.*, 252 N.J.Super. 545, 600 A.2d 184, 185 (Law Div.1991); *White v. Stevens*, 300 S.C. 241, 387 S.E.2d 260, 262 (1990). They have not carried their burden.

Under these facts, exercising personal jurisdiction over Day–Impex or Sprinkler Bulb would be neither fair nor just. When Sprinkler Bulb sold Day–Impex's glass bulbs to Firematic in Massachusetts, neither Day–Impex nor Sprinkler Bulb could reasonably have anticipated that they would be haled into Tennessee's courts. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 567; *Masada Inv. Co. v. Allen*, 697 S.W.2d at 334.

### IV.

We reverse the order denying Day–Impex's and Sprinkler Bulb's Tenn.R.Civ.P.

12.02(2) motions to dismiss and remand the case with directions that the trial court enter an order dismissing the complaint against Day–Impex and Sprinkler Bulb. We also tax the costs of this appeal jointly and severally to Davis Kidd Booksellers, Inc., Linda Roberts, and Graces, Inc. for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.

---

**5.** The record contains no evidence that either the contractor, the subcontractor, or the suppli-

er are judgment-proof.