Roger E. JENNE and Thomas L. Rasnic, Plaintiffs–Appellees,

v.

Georgia Anne SNYDER–FALKINHAM, Defendant–Appellant.

Court of Appeals of Tennessee, Eastern Section.

Aug. 28, 1997.

Permission to Appeal Denied by Supreme Court April 13, 1998.

---

2.  The motions for default judgment and for summary judgment were heard at the same time.

328

Michael E. Richardson, Patrick, Beard & Richardson, P.C., Chattanooga, for Defendant–Appellant.

E. Blake Moore, Spears, Moore, Rebman & Williams, Chattanooga, David F. Harrod, Athens, for Plaintiffs–Appellees.

Roger Jenne, Cleveland, pro se.

*OPINION*

McMURRAY, Judge.

This case originated as an action to recover contractual attorney fees which the plaintiffs claim are due and owing for services rendered to the defendant in a legal action in Virginia.[1]

The plaintiff, Roger Jenne, is an attorney and a resident of the State of Tennessee with offices in Cleveland. The plaintiff, Thomas L. Rasnic, is an attorney licensed to practice both in Virginia and Tennessee and is a resident of Virginia. The defendant employed the plaintiffs to represent her in an action against numerous parties arising from alleged misdeeds on the part of her business partner and attorney including other partners in her former attorney's firm.

To the original complaint, the defendant responded with a motion to dismiss asserting that she was not subject to in personam jurisdiction in the courts of Tennessee for lack of minimum contacts. Alternatively, the defendant asked for a stay of proceedings pending the outcome of an appeal then pending before the Supreme Court of Virginia.

The defendant filed a counterclaim in which, among other things, she admitted that she had employed the plaintiffs to represent her in the case against the Virginia law firm. She further avers that the plaintiffs settled the Virginia case without her permission or consent and that an order of dismissal with prejudice had been filed without her knowledge or approval.

The trial court resolved all issues against the defendant by summary judgments. This appeal resulted. We affirm the judgment of the trial court.

The defendant has presented us with a multiplicity of issues to consider on this appeal. The sum and substance of her complaints, however, may be resolved into three issues, *i.e.*, did the Tennessee Court have in personam jurisdiction over the defendant; was the plaintiff collaterally estopped from relitigating the issue of whether the plaintiffs had authority to settle the Virginia case; and whether the court erred in sustaining a motion for summary judgment in favor of the plaintiffs in the original action.

We will first set out an abridged statement of the facts leading up to this appeal.

While the dispute before us is simple, the underlying Virginia action has had a long and torturous history in the Virginia Courts and Federal Court culminating in an appeal to the Virginia Supreme Court. *See Georgia Anne Snyder–Falkinham v. Bruce C. Stockburger, et al,* 249 Va. 376, 457 S.E.2d 36 (Va.1995). In the Virginia case, when the defendant here, attempted to repudiate the settlement agreement, her attorneys—plaintiffs here—were permitted to withdraw and the defendant employed other counsel. By new counsel, the defendant sought to have

1. For convenience the parties in this case will be referred to as plaintiffs and defendant. Unless otherwise stated the parties will be so referred to throughout this opinion, notwithstanding, that they may have been designated differently in prior litigation in Virginia or Federal Courts.

the order memorializing the settlement set aside. After an adverse decision in the trial court, the defendant sought an appeal to the Virginia Supreme Court. The issues addressed by the Virginia Supreme Court are, "whether the trial court erred in ruling that the plaintiff [defendant here] agreed to a settlement of the underlying action and whether the trial court erred in holding that the plaintiff's trial attorneys had the authority to have the action dismissed with prejudice." The Virginia Supreme Court affirmed the judgment of the trial court. Defendant thereafter brought an action in the Western Federal District Court of Virginia alleging, inter alia, that the "defendants 'conspired with the Virginia Judges and Justices of the Virginia Supreme Court' causing them to 'corruptly' decide her appeal." The suit in Federal District Court was dismissed and sanctions were imposed on the defendant and her attorneys. The federal suit is of little consequence except in to demonstrate that the defendant has had her day in court, on the merits of the issue relating to the validity of the settlement agreement.

The trial court in this case overruled the defendant's motion to dismiss finding that the undisputed facts established that the defendant had sufficient contacts with Tennessee to confer in personam jurisdiction upon its court.[2] In a lengthy "memorandum of law in support of motion to dismiss or to stay proceedings," the defendant asserts many facts as to why she does not have minimum contacts with the State of Tennessee to confer jurisdiction. We point out that the memorandum is simply an unsworn statement by the defendant's counsel. The memorandum, therefore, cannot be considered except to the extent that questions of law and authorities cited touch the issue under consideration.

The defendant also filed a lengthy affidavit in support of her motion. The plaintiffs responded with a multitude of affidavits and other evidence.

As noted by the trial judge, "there is some disparagy [sic] between the litigants, but many facts are consistent." In resolving the minimum contacts question, the trial court, in its memorandum opinion stated:

All agree the parties met at the Tri–Cities Airport in Tennessee to discuss the possibilities of the plaintiffs representing the defendant. All admit many telephone conversations occurred between the parties. It is admitted that the defendant, Georgia Anne Snyder–Falkinham that she came to Cleveland on at least two or three occasions relative to her case. It is alleged, and it is undoubtedly true, the plaintiff, Jenne, spent many days in Tennessee in preparation of the defendant's case.[3]

The motion to dismiss was subsequently overruled. The trial court found that the defendant had sufficient minimum contacts with Tennessee to satisfy due process.[4]

The "minimum contacts" test, as it is commonly referred, first requires the court to identify the contacts between the nonresident and the forum. The court must then determine whether exercising personal jurisdiction based on these contacts is consistent with traditional notions of fair play and substantial justice. *Davis Kidd Booksellers, Inc. v. Day–Impex, Ltd.*, 832 S.W.2d 572, 575 (Tenn.App.1992). Davis Kidd held that both steps entail "a careful, not mechanical, analysis of the facts of each case with particular focus on the defendant, the forum, and the nature of the litigation." *Davis Kidd*, 832 S.W.2d at 575. Determination of the second half of

2. While the pleading is styled "Motion to Dismiss" it is in the nature of a Rule 56 motion for summary judgment. Affidavits and other materials were filed with the motion which were considered by the trial court.

3. Mr. Jenne in his affidavit deposed that a substantial amount of work was done in Tennessee and that the defendant along with her bookkeeper traveled to Tennessee to work with him. These facts are undisputed.

There is a dispute concerning the place where the contract was made. The plaintiffs insist that

the agreement was entered into at the Tri–Cities Airport, however, the defendant insists that the contract did not arise until she executed a written contract, which was circulated in the U.S. mail.

4. The Hon. Earl Henley, Chancellor, overruled the motion to dismiss for lack of in personam jurisdiction and then recused himself. Thereafter, the Hon. Jeffrey F. Stewart, Chancellor concluded the case.

the analysis should include consideration of "the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the state's shared interest in furthering fundamental, substantive social policies." Id.

*Diane Mullins v. Harley–Davidson Yamaha BMW of Memphis,* 924 S.W.2d 907 (Tenn. App.1996).

With respect to interstate contractual obligations, we have emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities. *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950). *See also McGee v. International Life Insurance Co.,* 355 U.S. 220, 222–223, 78 S.Ct. 199, 200–201, 2 L.Ed.2d 223 (1957).

*J.I. Case Corp. v. Williams,* 832 S.W.2d 530 (Tenn.1992).

■ We are satisfied that the uncontroverted evidence in the record is sufficient to meet the "minimum contacts" test. We therefore agree with the findings of the trial court and hold that the defendant has minimum contacts in the State of Tennessee so that the state may lawfully exercise in personam jurisdiction over her.

■ After the resolution of the question regarding jurisdiction, the plaintiffs, Jenne and Rasnic filed motions for summary judgment asking the court to dismiss the counterclaim on the grounds that the defendant was collaterally estopped from relitigating the issues that had been litigated in the previous Virginia litigation. The motion was sustained and the counterclaim was dismissed. The motion was properly supported with affidavits and other evidence sufficient to show, absent competent countervailing evidence, that they were entitled to judgment as a matter of law. No such countervailing evidence was presented. We have examined the judgment of the Virginia trial court and the decision of the Virginia Supreme Court and we unequivocally find that the issues

litigated in Virginia are the same as those sought to be litigated in this case.

The defendant, in her brief, insists that the trial court "mis-characterized the contentions" raised in her counterclaim. We have reviewed the counterclaim carefully and have reached the conclusion that the counterclaim is nothing more than an attempt to relitigate the issues resolved in the trial court and the Supreme Court of Virginia and that under the laws of this state the doctrine of collateral estoppel was properly applied.

One of the leading cases in this jurisdiction regarding collateral estoppel is *Morris v. Esmark Apparel, Inc.,* 832 S.W.2d 563, 566 (Tenn.App.1991) wherein the following teachings are to be found:

This court in reviewing whether the application of collateral estoppel is appropriate should consider: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *See Bresnahan [v. May Department Stores Co.,* 726 S.W.2d 327 (Mo.Banc 1987)] at 330; *Salida School District R–32–J v. Morrison,* 732 P.2d 1160 (Colo.1987).

*Morris* at page 566.

There is another case, however, applying the doctrine of collateral estoppel involving the same issue. In the unreported case of *McDaniel v. Stambaugh,* 1997 Tenn.App. LEXIS 255 this court was faced with an almost identical question. In *McDaniel,* the plaintiff employed Stambaugh to represent her in a personal injury claim. The claim was subsequently settled. The plaintiff claimed that she did not agree to the settlement and refused to abide by the terms of the settlement. The defendant in that case, brought an action for specific performance of the settlement agreement. McDaniel defended that action on the grounds that her

attorney did not have authority to settle the claim and that she did not agree to the settlement. The suit was tried and resulted in a judgment on the merits against McDaniel. McDaniel subsequently sued Stambaugh claiming damages for settling the claim against her wishes. This court, in the suit between McDaniel and Stambaugh focused on the tests set out in *Morris,* supra. It is instructive to quote at some length from *McDaniel* in order to demonstrate that this case and *McDaniel* touch on all four corners. In *McDaniel,* we find the following analysis:

In the specific performance suit, the issue decided by that Court was whether Ms. McDaniel gave Mr. Stambaugh the authority to settle her lawsuit for $50,000. The Court found that she did give Mr. Stambaugh this authority. In order for Ms. McDaniel to recover in this suit she must prove that Mr. Stambaugh settled without her authority. Since it has already been judicially determined that she did give Mr. Stambaugh the authority to settle, the first element is satisfied.

The second element has also been satisfied because the prior adjudication did result in a judgment on the merits. The specific performance suit resulted in the opposing party being granted specific performance and Ms. McDaniel being forced to accept the $50,000.

In this suit, collateral estoppel is being asserted against Ms. McDaniel who was a party in the specific performance suit. Mr. Stambaugh did not have to be a party in the specific performance suit. *See Fourakre v. Perry,* 667 S.W.2d 483 (Tenn.App. 1983), (holding that mutuality of parties is not necessary for collateral estoppel). Thus, the third element of collateral estoppel has been satisfied.

The final element of collateral estoppel has also been satisfied because Ms. McDaniel was afforded a full and fair opportunity in the specific performance suit to litigate the issue of whether she gave Mr. Stambaugh the authority to settle the original tort suit for $50,000.

We are unable to perceive any real or distinguishable difference between *McDaniel* and the case at hand. We find that the trial court did not err in sustaining the plaintiffs' motions for summary judgment based on the doctrine of collateral estoppel.

■ The final question to be resolved is whether the court erred in sustaining the motion for summary judgment in favor of the plaintiffs in the original action. The plaintiffs in their motion for summary judgment asserted that there was no genuine issue of any material fact and that they were entitled to judgment as a matter of law. In support of their motion, both plaintiffs filed affidavits giving an itemized listing of expenses advanced in the Virginia case, relied upon a copy of the contingency contract between the plaintiffs and the defendant which provided for a contingent fee of 40% of the amount recovered plus expenses and further provided that the plaintiffs would have a lien on any recovery. The evidence presented by the plaintiffs in support of their motion for summary judgment, if unrebutted, was sufficient to entitle them to a judgment as a matter of law. The burden, therefore, shifted to the defendant to come forth with competent evidence to demonstrate that a genuine issue of a material fact existed. In *Byrd v. Hall,* 847 S.W.2d 208, the court clearly set out the responsibilities of the parties. In *Byrd* it is said:

[T]he cases make clear that the party seeking summary judgment must carry the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law. (Citations omitted). Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. (Citations omitted). In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial. "If he does not so respond, summary judgment ... shall be entered against him." Rule 56.05. If the motion is denied, the moving party "has simply lost a

preliminary skirmish and must proceed to trial." (Citation omitted).

*Byrd,* at page 211.

The defendant responded to the plaintiffs' motion for summary judgment with an unsworn statement by her attorney which attempts to point out existing genuine issues of material fact and copies of Virginia law relating to conduct of attorneys. Her attorney in his statement asserted that the defendant adopted and incorporated by reference her response to the counter-defendants' motion for summary judgment.[5] Our review of the record persuades us that the defendant has failed to meet the burden imposed upon her by *Byrd,* supra. We find no error on the part of the trial court in sustaining the plaintiffs' motion for summary judgment.[6]

We affirm the judgment of the trial court in all respects. Costs are assessed to the defendant and this case is remanded to the trial court.

GODDARD, P.J., and SUSANO, J., concur.

---

**5.** The counter-defendants' motion for summary judgment mentioned here is the motion for summary judgment which was sustained resulting in a dismissal of the counterclaim.

**6.** We should note in passing that the counterclaim did make some nebulous references to perceived acts of malpractice attributed to the plaintiffs. Our review of the record, however, persuades us that the counterclaim fails to state a cause of action for legal malpractice as a matter of law.