# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
## Assigned on Briefs August 20, 2013

## WOLFF ARDIS, P.C. v. JONATHAN C. DAILEY, ET AL.

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-11-1191-1    Walter L. Evans, Chancellor

---

### No. W2013-01127-COA-R3-CV - Filed October 11, 2013

---

This appeal involves the issue of personal jurisdiction over an out-of-state attorney. Defendant is an attorney who resides in Washington D.C. and practiced with a law firm in Virginia. He sought the assistance of Plaintiff, a Memphis law firm, in connection with a lawsuit that Defendant had filed in Maryland. After several discussions, Defendant, Plaintiff, and the client eventually entered into a contract whereby Plaintiff associated with Defendant as co-counsel in the Maryland case. After trial, Defendant allegedly refused to pay his one-half share of the expenses, as provided by the parties' contract. Plaintiff then filed the instant lawsuit against Defendant in Tennessee. The trial court granted Defendant's motion to dismiss for lack of personal jurisdiction. We reverse and remand for further proceedings.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

R. Layne Holley, Germantown, Tennessee, for the appellant, Wolff Ardis, P.C.

Beth Brooks, Memphis, Tennessee, for the appellee, Jonathan C. Dailey

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Defendant Jonathan Dailey is an attorney who resides in Washington D.C. and conducts business as the Law Office of Jonathan C. Dailey (collectively "Dailey"). Dailey is licensed to practice in Washington D.C., Maryland, and Virginia. While Dailey was practicing with a law firm located in Virginia, he filed a products liability case in Maryland, against American Honda Motor Company and others, on behalf of a client whose five children were injured in an automobile accident. One of those five children lost her eye due to glass that shattered from a side window of the vehicle. Thus, Dailey began searching for an "automobile glass expert" for the case. Eventually, he located Patrick Ardis, whose law office, Wolff Ardis, P.C., is located in Memphis, Tennessee.[1] Mr. Ardis possessed experience and expertise in "auto glass" litigation.

The parties executed a "Contract for Legal Services" on May 10, 2010. The contract provided that Wolff Ardis would assume responsibility for "the preparation of the glazing product liability case against Honda, including preparing experts, conducting deposition and trial examinations of Plaintiff's and Defendant's experts and handling all glazing discovery." The contract provided that Dailey and Wolff Ardis would each receive 50% of the contingent attorney's fee if a recovery was obtained. It further provided for a division of the expenses between the attorneys, whereby each firm would pay "50% of all costs relating to glazing experts, including testing and giving testimony," and Dailey would pay "100% of all other costs." The contract provided that it was to be construed and enforced according to the laws of Virginia. The contract was signed in Virginia by Dailey and by the client, and it was signed in Tennessee by Mr. Ardis. The signature pages were exchanged by email only.

The products liability case was tried before a jury in Maryland in March 2011 and resulted in a defense verdict. Wolff Ardis billed Dailey for $48,636.45 in expenses, but Dailey refused to pay. In July 2011, Wolff Ardis filed the instant lawsuit against Dailey in the chancery court of Shelby County, Tennessee, alleging breach of contract. The complaint alleged that jurisdiction was proper in Tennessee because "[a]ll of the contacts, acts and transactions giving rise to this Petition for Breach of Contract Regarding Attorney Fees and the Petitioner's claim for relief as a creditor of the Respondent occurred in Memphis, Shelby County, Tennessee." The complaint alleged that Dailey had "reached out" to Wolff Ardis in Tennessee, entered into a contract with Wolff Ardis with regard to the Maryland litigation,

---

[1] According to Dailey, he found Mr. Ardis through an Internet search. Mr. Ardis claims that Dailey told him that he obtained his name from another expert. However, this dispute is immaterial for purposes of our analysis. It is undisputed that it was Dailey who sought out Mr. Ardis.

and "created an account" with Wolff Ardis for the expenses it owed in connection with the lawsuit. Wolff Ardis sought a judgment against Dailey for $48,636.45, in addition to pre-judgment interest, court costs, etc. Wolff Ardis attached to its complaint the affidavit of the firm bookkeeper with an itemized list of expenses billed to Dailey.

In November 2012, Dailey, through local counsel, filed a motion to dismiss for lack of personal jurisdiction pursuant to Tennessee Rule of Civil Procedure 12.02(2). Dailey alleged that the Tennessee court's exercise of personal jurisdiction over him "would not comport with the notions of fair play and substantial justice." He submitted his own affidavit, stating that he is domiciled in Washington D.C. and does business in Virginia and Maryland. Dailey stated that he performed the work for his portion of the products liability suit in Maryland and in Virginia, and that he had never been to Tennessee or conducted business in Tennessee. He noted that Mr. Ardis traveled to Maryland for trial, and that the contract provided that it would be controlled by Virginia law. In short, Dailey argued, in his supporting memorandum, that he had "no relationship" with Tennessee and that "the relationship between the claim for breach of contract and the contacts is tenuous." Dailey argued that either Virginia or Maryland would have "a far greater interest in litigating such a claim than Tennessee."

In response to Dailey's motion to dismiss, Wolff Ardis submitted the affidavit of Mr. Ardis, in which he provided more details regarding the parties' contacts and their business relationship in general. Mr. Ardis noted at the outset that he is a resident of Tennessee, he is licensed to practice law in Tennessee, and he is a shareholder in the Wolff Ardis law firm, which is a corporation authorized to do business in Tennessee. Mr. Ardis had worked in automobile glass products liability for twenty years. On July 22, 2009, Dailey sent Mr. Ardis an email, soliciting assistance in Dailey's automobile glass products liability case. According to Mr. Ardis, Dailey stated that he had obtained Mr. Ardis's name from an expert whom he was planning to use. Mr. Ardis initially responded and offered to help Dailey without a fee or case involvement, and he sent Dailey draft discovery that he had used in other glass cases. Thereafter, Dailey called Mr. Ardis several more times, on both his office telephone in Memphis and his personal mobile phone, in order to solicit advice on matters concerning the litigation. During one of those calls, Dailey proposed that Wolff Ardis become co-counsel in the case and handle the glass products liability issue. At that time, Mr. Ardis stated that his firm might be interested, but only on the basis of limited expenses to his firm. Negotiations continued, and in early 2010, the parties were able to agree on suitable terms for the association agreement. The parties, as well as the client, then executed the Contract for Legal Services in May 2010. After the contract was executed, Dailey corresponded with Mr. Ardis on numerous occasions by telephone, by mail, and by email, on matters dealing with the products liability portion of the case, including evidentiary matters, trial strategy, expert testimony and expenses. The parties were in close contact throughout the pre-trial

phase and until the trial in March 2011. Mr. Ardis claimed that the instant lawsuit was "based upon those contacts and my firm's reliance thereon."

Wolff Ardis also filed its own memorandum, in which it highlighted the facts that Dailey had purposefully targeted a Tennessee attorney, had multiple contacts with Mr. Ardis in Tennessee by telephone and by email, and entered into a contract that would clearly have consequences in Tennessee, where Wolff Ardis performed most of its work. Wolff Ardis argued that Tennessee had a substantial interest in protecting its residents from injuries caused by out-of-state actors. It noted that the contract contained a choice-of-law clause, but not a forum selection clause, and Wolff Ardis argued that Virginia had no connection with the underlying litigation or the contract.

On April 19, 2013, the trial court entered an order granting Dailey's motion to dismiss for lack of personal jurisdiction. The trial court noted that the parties' contract "was for services to be rendered in Maryland in connection with Maryland litigation," and it was to be construed according to Virginia law. It also noted that Dailey was licensed to practice law in Virginia, Maryland, and Washington D.C. The trial court concluded that Dailey "did not purposefully avail himself of the benefits and protections offered by the State of Tennessee through the act of seeking legal advice from [Wolff Ardis] regarding the Maryland litigation" or "by sending emails or making telephone calls to [Wolff Ardis]." Ultimately, the court was "not satisfied that [Dailey] has the minimum contacts with Tennessee necessary to subject him to the jurisdiction of this court." As such, the complaint filed by Wolff Ardis was dismissed without prejudice. Wolff Ardis timely filed a notice of appeal.

## II. ISSUE PRESENTED

The basic issue presented on appeal, as we perceive it, is whether the trial court erred in finding a lack of minimum contacts necessary to support the exercise of personal jurisdiction over Dailey by a Tennessee court. For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

## III. STANDARD OF REVIEW

"The plaintiff bears the ultimate burden of demonstrating that the trial court may properly exercise personal jurisdiction over a defendant." *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 643 (Tenn. 2009) (citing *Chenault v. Walker*, 36 S.W.3d 45, 56 (Tenn. 2001); *Davis Kidd Booksellers, Inc. v. Day–Impex, Ltd.*, 832 S.W.2d 572, 577 (Tenn. Ct. App. 1992)). However, "[t]his burden is ordinarily not a heavy one, because personal jurisdiction need only be demonstrated by a preponderance of the evidence." *Id.* (citations omitted).

A defendant may challenge personal jurisdiction by filing a Rule 12.02(2) motion to dismiss. ***Gordon***, 300 S.W.3d at 643-44. The defendant may or may not choose to support its motion with affidavits or other evidentiary materials.[2] ***Id.*** at 644 (citing *Humphreys v. Selvey*, 154 S.W.3d 544, 550 n. 5 (Tenn. Ct. App. 2004)). If the defendant does support its motion with affidavits, then "the plaintiff must establish its prima facie showing of personal jurisdiction over the defendant by filing its own affidavits or other written evidence." ***Id.*** (citing *Chenault*, 36 S.W.3d at 56; *Mfrs. Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d 846, 854-55 (Tenn. Ct. App. 2000)). "[T]he trial court's responsibility is to determine whether the plaintiff has alleged or presented sufficient facts to survive the motion to dismiss." ***Id.*** (citing *Progeny Mktg. v. Farmers & Merchs. Bank*, No. M2003-02011-COA-R3-CV, 2005 WL 819732, at *2 (Tenn. Ct. App. Apr. 7, 2005); *Chase Cavett Servs., Inc. v. Brandon Apparel Group, Inc.*, No. 02A01-9803-CH-00055, 1998 WL 846708, at * 1 (Tenn. Ct. App. Dec. 7, 1998)). The trial court must take as true all of the factual allegations in the plaintiff's complaint and supporting papers, if any, and must resolve all factual disputes in the plaintiff's favor. ***Id.*** (citing *Chenault*, 36 S.W.3d at 56; *Mfrs. Consolidation Serv., Inc.*, 42 S.W.3d at 855). "Dismissal is proper only if all the specific facts alleged by the plaintiff collectively fail to establish a prima facie case for personal jurisdiction." ***Id.*** (citing *Mfrs. Consolidation Serv., Inc.*, 42 S.W.3d at 855).

A decision regarding the exercise of personal jurisdiction over a defendant involves a question of law, which we review "de novo with no presumption of correctness for the purpose of determining whether the plaintiff has made out a prima facie basis for the exercise of personal jurisdiction over the defendant." ***Gordon***, 300 S.W.3d at 645. The question before us, then, is whether, taking the plaintiff's factual allegations as true and resolving all reasonably disputed facts in the plaintiff's favor, the plaintiff has shown, by a preponderance of the evidence, that Tennessee courts may properly exercise jurisdiction over the defendant. *See **State v. NV Sumatra Tobacco Trading Co.***, 403 S.W.3d 726, 739 (Tenn. 2013).

## IV.   DISCUSSION

Tennessee's long-arm statute permits the courts of this state to exercise jurisdiction upon, among other bases, "'[a]ny basis not inconsistent with the constitution of this state or of the United States.'" ***Mfrs. Consolidation Serv., Inc.***, 42 S.W.3d at 855 (quoting Tenn. Code Ann. §§ 20–2–214(a)(6), 20–2–225(2)). "When a state's long-arm statute authorizes the assertion of personal jurisdiction to the limits of federal due process, as does Tennessee's long-arm statute, the issue becomes simply whether the trial court's exercise of personal

---

[2] Unlike Rule 12.02(6) motions, Rule 12.02(2) motions "are not converted to motions for summary judgment when either or both parties submit matters outside the pleadings either in support of or in opposition to the motion." ***Gordon***, 300 S.W.3d at 643 (citing *Chenault*, 36 S.W.3d at 55).

jurisdiction over the defendant meets due process requirements." *Id.* "[D]ue process obligates the courts to ascertain whether it is 'fair and substantially just to both parties to have the case tried in the state where the plaintiff has chosen to bring the action.'" *Gordon*, 300 S.W.3d at 646 (quoting *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 335 (Tenn. 1985)). A state cannot enter a binding judgment against a defendant that has "'no contacts, ties or relations'" with the state. *NV Sumatra*, 403 S.W.3d at 743 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). However, the United States Supreme Court announced long ago that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The Court's "minimum contacts" language "has been the crux of personal jurisdiction in America ever since *International Shoe* was decided." *NV Sumatra*, 403 S.W.3d at 741-42.

"Federal and state courts now recognize two varieties of personal jurisdiction—specific jurisdiction and general jurisdiction." *Gordon*, 300 S.W.3d at 647. "Specific jurisdiction may be asserted when the plaintiff's cause of action arises from or is related to the nonresident defendant's activities in or contacts with the forum state." *Id.* In order to invoke specific jurisdiction, the plaintiff must show that the nonresident defendant has purposely established significant contact with the forum state and that the plaintiff's cause of action arises out of or is related to these activities or contacts. *Id.* (citing *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174). General jurisdiction, on the other hand, "may be asserted when the plaintiff's cause of action does not arise out of and is not related to the nonresident defendant's activities in the forum state." *Id.* The parties agree that the facts of this case implicate specific personal jurisdiction rather than general personal jurisdiction.

The Tennessee Supreme Court recently "reiterate[d] the law of specific personal jurisdiction, as it applies in Tennessee" in *State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, 746 (Tenn. 2013) with the following summary, drawn from United States Supreme Court and Tennessee Supreme Court precedent:

> Tennessee's long-arm statutes are designed to permit its courts to assert personal jurisdiction to the fullest extent authorized by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Due process permits a state to enforce its judgments against a defendant only when the defendant has sufficient minimum contacts with the state that jurisdiction does not offend traditional notions of fair play and substantial justice. Minimum contacts are present when the defendant's purposeful conduct and connection

with the forum state are such that the defendant avails itself of the benefits and protections of the state's laws and should, therefore, reasonably anticipate being haled into that state's courts.

Assessing minimum contacts involves a two-part test. The first step is the fact-gathering exercise of identifying the relevant contacts. The plaintiff is required to establish that minimum contacts exist by a preponderance of the evidence. The court should consider the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts. A defendant's contacts are sufficiently meaningful when they demonstrate that the defendant has purposefully targeted Tennessee to the extent that the defendant should reasonably anticipate being haled into court here.

If the court finds sufficient minimum contacts, then the inquiry should proceed to the second step. At step two, the defendant bears the burden of showing that, despite the existence of minimum contacts, exercising jurisdiction would be unreasonable or unfair. The court, at this stage, should consider such factors as the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the state's interest in furthering substantive social policies.

*Id.* at 759-60. "Both steps call for a careful, not mechanical, analysis of the facts of each case with particular focus on the defendant, the forum, and the nature of the litigation." ***Davis Kidd Booksellers***, 832 S.W.2d at 575.

The first step in our analysis, then, is to identify Dailey's contacts with the state of Tennessee. Dailey first contacted Mr. Ardis in Tennessee via email on July 22, 2009. At that time, he was residing in Washington D.C. but apparently practicing with a Virginia law firm. Dailey sought assistance from Wolff Ardis with his automobile glass products liability case pending in Maryland. Mr. Ardis initially responded and offered to assist Dailey without a fee or case involvement, and he sent Dailey draft discovery to use in the case. Dailey called Mr. Ardis on several other occasions thereafter, both at his Memphis law office and on Mr. Ardis's personal mobile phone, in order to solicit advice on matters concerning the litigation. During one of these calls, Dailey proposed that Wolff Ardis become co-counsel in the Maryland case and handle the glass products liability issue. Negotiations continued, and in early 2010, the parties came to an agreement on suitable terms for a contract. The parties and the client executed the Contract for Legal Services in May 2010, with Mr. Ardis signing the contract in Tennessee, and Dailey and the client signing the contract in Virginia. After the

contract was executed, Dailey corresponded with Mr. Ardis by telephone, by mail, and by email, on numerous occasions on matters dealing with the products liability portion of the case, including evidentiary matters, trial strategy, expert testimony and expenses. The parties were in close contact throughout the pre-trial phase and until the trial in March 2011. Mr. Ardis traveled to Maryland for the trial.

Having identified Dailey's contacts with Tennessee, our next task is to "weigh the quantity of those contacts, their nature and quality, and their connection to the cause of action." *NV Sumatra*, 403 S.W.3d at 760. The ultimate purpose of this inquiry is "to determine whether the contacts demonstrate that [Dailey] has purposefully availed itself of Tennessee's laws, such that it should reasonably anticipate being haled into court here. If not, then exercising jurisdiction over [Dailey] would automatically be deemed unfair under the Due Process Clause." *See id.*

First we will assess the quantity of Dailey's contacts with Tennessee. "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King*, 471 U.S. at 476 n.18 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)). The facts show that Dailey contacted Wolff Ardis in Tennessee on numerous occasions over a period of nearly two years. He contacted Mr. Ardis at the Wolff Ardis law office in Memphis and on Mr. Ardis's personal telephone. He also communicated with Wolff Ardis via mail and email. Although neither party attempted to quantify the precise number of contacts Dailey had with Wolff Ardis in Tennessee, it was characterized by Mr. Ardis as "several" phone calls prior to the execution of the contract and "numerous" contacts, "telephonically, by mail and by e-mail," thereafter. He said the parties maintained "close contact."

The nature and quality of these contacts must also be considered, as well as their connection to the cause of action. When a defendant purposefully derives benefit from its interstate activities, "it is not unfair for [the defendant] to face suit in other States for consequences that arise *proximately* from such activities." *NV Sumatra*, 403 S.W.3d at 764 n.39 (internal quotation omitted). Here, it was Dailey who sought out Wolff Ardis due to its expertise and experience in auto glass litigation. Dailey solicited advice regarding his Maryland lawsuit and eventually proposed that Wolff Ardis associate with him as co-counsel in the case. Thus, Dailey purposefully established a significant, continuous and ongoing contractual relationship with Wolff Ardis in Tennessee. Obviously, Dailey was aware that Wolff Ardis would expend a substantial amount of time working in Tennessee in preparation for the trial. It is true that Dailey never physically entered the state of Tennessee, but that does not mean that he is not subject to personal jurisdiction in this state. It is well-established that "'the absence of physical contacts will not defeat in personam jurisdiction where a commercial actor purposefully directs his activities toward citizens of the forum

State and litigation results from injuries arising out of or relating to those activities.'" *NV Sumatra*, 403 S.W.3d at 751 (quoting *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985)). In *Precision Castings of Tenn., Inc. v. H & H Mfg.*, No. M2012-00334-COA-R3-CV, 2012 WL 3608668, at *3 (Tenn. Ct. App. Aug. 22, 2012), for example, the fact that no one from the defendant out-of-state corporation "physically visited" Tennessee was "not dispositive" when the defendant "purposefully directed" its activity toward a Tennessee corporation and a breach of contract suit arose from injuries related to that activity. *See also Masada*, 697 S.W.2d at 335 (finding minimum contacts although the defendant never physically entered Tennessee). The United States Supreme Court explained in *Burger King Corp. v. Rudzewicz*, 471 U.S. at 476, 105 S.Ct. at 2184, that personal jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum State." The Court elaborated:

> Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

These concerns, expressed by the Court in 1985, are even more true today.

Here, Dailey himself created a substantial connection with Tennessee. Dailey purposefully directed his activity toward Tennessee to initiate a contractual relationship with a Tennessee attorney, and litigation has arisen in relationship to that activity. There is a direct connection between Dailey's contacts with Tennessee and the current claim for breach of contract filed by Wolff Ardis. Under the circumstances, we find that Dailey purposely targeted Tennessee and had sufficient minimum contacts with Tennessee such that he should reasonably have anticipated that he might be haled into court in Tennessee in connection with the contract.

However, we have, thus far, only analyzed the first part of the "minimum contacts" test. "If the court finds sufficient minimum contacts, then the inquiry should proceed to the second step," in which "the defendant bears the burden of showing that, despite the existence of minimum contacts, exercising jurisdiction would be unreasonable or unfair." *NV Sumatra*, 403 S.W.3d at 760. At this stage, we must consider "such factors as the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief,

the judicial system's interest in obtaining the most efficient resolution of controversies, and the state's interest in furthering substantive social policies." *Id.* "The second step involves some subjective value judgment by the court concerning the quality and nature of the defendant's contacts with the forum and the fair and orderly administration of the law." *Davis Kidd Booksellers*, 832 S.W.2d at 575. As noted above, the burden is on Dailey to show that exercising jurisdiction would be unreasonable or unfair. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Before the trial court, Dailey submitted an affidavit detailing the circumstances surrounding the parties' transactions but he did not submit any evidence with regard to whether litigating in Tennessee would be burdensome or whether the aforementioned factors otherwise weigh in favor of or against litigating in Tennessee. He did make some arguments in his supporting memorandum that are relevant to the factors at issue. He pointed out that "most" of the parties to the contract live outside Tennessee. However, we find that this factor, under the circumstances, does not necessarily weigh against litigating in Tennessee. Wolff Ardis is based in Memphis, Tennessee, and Mr. Ardis resides here. Tennessee certainly has an interest in adjudicating a dispute involving a Tennessee resident and Tennessee corporation in which it is alleged that an injury was caused by an out-of-state actor. *See Burger King Corp.*, 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."); *Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560, 565 (Tenn. 1981) ("[W]hen the contract is with a resident of Tennessee, the State's interest in resolving a suit based on the contract and brought by that resident cannot be doubted.") (quotation omitted). Likewise, Wolff Ardis has an obvious interest in obtaining relief in a convenient forum. Dailey resides in Washington D.C., but Washington D.C. has no other apparent connection to or interest in this case. Dailey was doing business in Virginia and Maryland at the time of the underlying litigation. Neither party to the instant lawsuit resides in either Virginia or Maryland. The parties' client apparently resided in Maryland, but he is not a party to this case. In short, the parties to *this* lawsuit are domiciled in Tennessee and in Washington D.C., and certain relevant activities took place in Maryland, and, to a lesser extent, Virginia. However, we are not convinced that any one of these other jurisdictions possesses a greater interest in litigating this controversy than does Tennessee.

Dailey did not present any evidence to demonstrate the "burden on the defendant" imposed by litigating in Tennessee.[3] He argued, without elaboration, in his memorandum

_____

[3] Dailey argued in his memorandum that it would place a "burden" on the Tennessee courts to have
(continued...)

-10-

that "the hardship of defending suit in Tennessee would be unreasonable," but he offered no facts to support this assertion. Based on the parties' circumstances, it is unavoidable that one of the parties will be forced to travel to a distant forum in order to litigate this case. Still, "the same conditions of modern technology which have made interstate business transactions flourish serve also to ease the burden of defending in a foreign forum." *Nicholstone*, 621 S.W.2d at 565. We cannot say, based on the facts before us, that Dailey has demonstrated that it is unfair or unreasonable for him to travel to Tennessee. Where a defendant "has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 475-76 (quotations omitted).

In summary, we find that Wolff Ardis met its burden of establishing by a preponderance of the evidence that Dailey had sufficient minimum contacts with the state of Tennessee to justify the exercise of personal jurisdiction. In response, Dailey failed to show that exercising jurisdiction would be unreasonable or unfair.

We note that other jurisdictions have considered similar issues of personal jurisdiction involving contracts with out-of-state attorneys, with mixed results.[4] In *Fischbarg v. Doucet*, 9 N.Y.3d 375, 385, 880 N.E.2d 22, 30 (N.Y. 2007), for example, New York's highest Court concluded that California clients who retained a New York lawyer for work on a case in Oregon were subject to personal jurisdiction in New York in a suit arising out of the contract. The Court concluded that the defendants "purposefully availed themselves of New York's legal services market by establishing a continuing attorney-client relationship with [the attorney]," and thereby "purposefully availed themselves of the benefits and protections of New York's laws governing lawyers." *Id.* The defendants' contacts with New York consisted of "project[ing] themselves into New York via telephone to solicit [the attorney's] legal services," and "establishing a continuing attorney-client relationship" that spanned nine

---

[3](...continued)
to construe the parties' contract according to Virginia law, but we are confident that a Tennessee court is competent to do so.

[4] Certainly there are no hard and fast or mechanical rules that can be applied in these cases. The United States Supreme Court has repeatedly rejected "any talismanic jurisdictional formulas" in deciding the issue of personal jurisdiction, explaining that "the facts of each case must [always] be weighed" in determining whether personal jurisdiction would comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 485-86. As the Court aptly noted, "any inquiry into 'fair play and substantial justice' necessarily requires determinations in which few answers will be written in black and white. The greys are dominant and even among them the shades are innumerable." *Id.* at 486 n.29.

months, which involved communicating via telephone, mail, e-mail and facsimile, though the defendants never physically entered New York. *Id.* "Given these facts," the Court said, "they should have reasonably expected to defend against a suit based on their relationship with plaintiff in New York." *Id.*

By contrast, in ***Zavian v. Foudy***, 130 Md.App. 689, 691-92, 747 A.2d 764, 765-66 (Md. Ct. App. 2000), the Maryland Court of Special Appeals found no personal jurisdiction over out-of-state clients who retained a Maryland attorney as their agent for endorsement deals, and all contacts among the parties were by fax, telephone, or mail. There were "little or no negotiations" among the parties, and the relevant documents were exchanged by mail or fax. *Id.* at 701; 747 A.2d at 771. The Court concluded that the defendants simply did not have "sufficient contact" with Maryland to subject them to personal jurisdiction there. *Id.* at 702; 747 A.2d at 771.

The most comparable Tennessee case we have encountered in our research is ***Jenne v. Snyder-Falkinham***, 967 S.W.2d 327, 328 (Tenn. Ct. App. 1997), which involved a Tennessee attorney (and another attorney from Virginia) who filed suit in Tennessee against a Virginia client for contractual attorney's fees. The client had retained the attorneys to represent her in a lawsuit in Virginia. She argued that she was not subject to personal jurisdiction in Tennessee due to a lack of minimum contacts. The relevant contacts in that case included: the parties meeting at the Tri-Cities Airport in Tennessee to discuss the possible representation; many telephone conversations between the parties; the client traveling to the attorney's office in Cleveland, Tennessee on two to three occasions relative to her case; and the attorneys spending "many days in Tennessee in preparation of the [client's] case." *Id.* at 329. The Court concluded that these contacts were sufficient to meet the "minimum contacts" test to justify the exercise of personal jurisdiction over the client in Tennessee. The Court stated, "'With respect to interstate contractual obligations, we have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.'" *Id.* at 330 (quoting *J.I. Case Corp. v. Williams*, 832 S.W.2d 530 (Tenn. 1992)).

The same holds true here. Dailey reached out to Tennessee to create a continuing contractual relationship with Wolff Ardis in Tennessee and established the requisite minimum contacts with Tennessee for this state to lawfully exercise personal jurisdiction over Dailey in a suit based on an alleged breach of that contract.

## V. CONCLUSION

For the aforementioned reasons, we reverse the trial court's order granting Dailey's motion to dismiss, and we remand for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee, Jonathan C. Dailey, individually and doing business as the Law Office of Jonathan C. Dailey, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.