**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-2086

MARK ADAM WESKER; NATASHA S. WESKER,

Plaintiffs − Appellants,

v.

BANK OF AMERICA, N.A.,

Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge. (1:21−cv−03319−SAG)

Submitted:  September 18, 2024                    Decided:  December 17, 2024

Before DIAZ, Chief Judge, RUSHING, Circuit Judge, and KEENAN, Senior Circuit Judge.

Affirmed by unpublished opinion.  Chief Judge Diaz wrote the opinion, in which Judge Rushing and Senior Judge Keenan joined.

**ON BRIEF:**  Mark A. Wesker, Natasha S. Wesker, Reisterstown, Maryland, Appellants Pro Se.   Melissa O. Martinez, MCGUIREWOODS LLP, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Chief Judge:

Mark and Natasha Wesker allege that Bank of America, N.A. mishandled their application for a modification of their home equity line of credit in several ways. They contend that the Bank (1) wrongfully denied their application, (2) misled them into believing that their payments were paused pending a decision on their application, and (3) misled them into believing that the Bank had granted the modification when it had in fact charged off the debt and reported it as delinquent.

The Weskers allege that the fallout from the Bank's actions damaged their credit score. Because of this financial harm, the Weskers sued. They assert multiple state and federal claims against the Bank: professional negligence and negligent misrepresentation, detrimental reliance, two claims under the Fair Credit Reporting Act, and a claim under the Maryland Consumer Protection Act.

The district court granted Bank of America's motion to dismiss for failure to state a claim. We agree with the district court that Maryland doesn't impose a duty on a bank that could give rise to a negligence claim on the allegations presented here. We also agree that the Weskers' remaining claims fail for want of allegations of specific misleading statements made or inaccuracies reported by the Bank.

So we affirm.

## I.

Because this appeal follows the district court's grant of Bank of America's motion to dismiss, "[w]e recount the facts as alleged in the complaint, accepting all well-pleaded

2

factual allegations as true." *Washington v. Hous. Auth. of Columbia*, 58 F.4th 170, 175 (4th Cir. 2023) (cleaned up).

A.

In 2007, the Weskers obtained a home equity line of credit from Bank of America.[1] Nine years later, the Bank notified the Weskers that the draw period—the period during which the Weskers could borrow against their property—would end in September 2017, at which point their monthly payments would increase by about 300%. The Weskers tried but failed to refinance or otherwise consolidate the line of credit with their primary mortgage. But they continued to make payments on the line of credit through February 2019.

At some point the Weskers learned that the Bank offered a "Home Loan Assistance Program," which the Bank advertised on its website and in other marketing materials.[2] J.A. 8. They applied to modify the terms of their line of credit under the Program in February 2019. The Weskers were concerned about their upcoming March payment, but a Bank representative told them that "it would not be a problem" and that they could expect a decision on their application within 30 days. J.A. 8. Despite receiving monthly statements requesting payment the Weskers believed that their monthly payments were suspended pending consideration of their application.

---

[1] A home equity line of credit is a line of credit "that allows the consumer to borrow money, using their home as collateral." *Lyons v. PNC Bank, N.A.*, 112 F.4th 267, 270 n.1 (4th Cir. 2024).

[2] The complaint doesn't allege the contents of these advertisements beyond the name of the program.

Bank of America rejected the Weskers' application in May. The Bank explained that the Weskers weren't eligible for a modification for multiple reasons, including the insufficient value of their property and the lack of a severe enough delinquency on the line of credit.[3] J.A. 8. The Bank told the Weskers that they could request a reevaluation by providing additional documents within 30 days, and it said that their line of credit would resume normal servicing if they didn't appeal. J.A. 8–9. The Weskers appealed.

Over the next few months, the Weskers periodically submitted and resubmitted documents to the Bank, only to be told documents were missing and needed to be resubmitted. In the meantime, they continued to receive monthly statements from the Bank requesting payment on the line of credit.

After first dismissing the appeal for failure to submit documents (that the Weskers had, in fact, submitted), the Bank reinstated the appeal. The Bank reappraised the Weskers' property at a higher value than an earlier appraisal, which led the Weskers to believe that their appeal would succeed.

Then, in September, the Weskers noticed that their online account indicated that the line of credit was closed out and their balance was $0.00. Only at this point did Bank of America stop sending them monthly invoices. The Weskers interpreted this to mean that their application for a modification had been approved and that the Bank had waived their payment obligations.

---

[3] The complaint names only these two reasons but suggests that the Bank may have provided other rationales. J.A. 8 (alleging Bank of America's letter gave "reasons which included" insufficient value and delinquency); J.A. 9 (alleging Bank of America denied the modification "for other 'reasons' without basis in fact.").

Not so.  Bank of America had instead given up on collecting on the line of credit and placed the Weskers in default.  It also reported the delinquency (as of April 2019) and the default to the consumer reporting agencies.  As a result, the Weskers' credit score dropped.  The Weskers discovered this in October 2020—over a year later—when they were denied a credit card.[4]

The Weskers filed disputes with Experian, claiming that Bank of America's report was inaccurate because (1) the Bank told them that their payments were suspended and (2) "a legitimate dispute existed with [the Bank] with regard to the missed payments."  J.A. 11.  Experian in turn notified the Bank of the disputes, but the Bank confirmed its reporting, and the report continued to weigh down the Weskers' credit score.

The Weskers allege that they had been prepared to repay their line of credit and would not have become delinquent had the Bank not misled them into believing that it had paused their line of credit payments and approved their modification application.

### B.

The Weskers sued the Bank in Maryland federal court.  They brought six claims: (1) professional negligence; (2) negligent misrepresentation; (3) detrimental reliance;[5] (4) and (5) negligent and willful violations of the Fair Credit Reporting Act, 15 U.S.C.

---

[4] The complaint doesn't mention any communications between the parties between September 2019 and October 2020.

[5] "Detrimental reliance" is Maryland's preferred term for promissory estoppel.  *See Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 523 n.1 (Md. 1996).

5

§§ 1681–1681x; and (6) violation of subtitle 3 of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13–301 to –320.

The district court granted the Bank's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

The district court held that the Bank didn't owe a duty of care that could give rise to tort liability on the first two claims. *Wesker v. Bank of Am., N.A.*, No. SAG-21-03319, 2022 WL 4608330, at *3 (D. Md. Sept. 30, 2022). On the detrimental reliance claim, the district court found that the Weskers didn't allege that the Bank made any clear and definite promises. *Id.* Similarly, the court rejected the Weskers' Fair Credit Reporting Act claims because the Bank accurately reported to Experian that the Weskers were delinquent—and had defaulted—on their line of credit payments. *Id.* at *4. And the court dismissed the Maryland Consumer Protection Act claim because none of the deceptive conduct alleged by the Weskers could be construed as deceptive, much less a deceptive trade practice. *Id.* at *4–5.

Proceeding pro se, the Weskers appealed.

## II.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the claims pleaded in a complaint. *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). "We review de novo the dismissal of a complaint under Rule 12(b)(6), accepting all factual allegations as true and drawing reasonable inferences in the plaintiff's favor." *Guerrero v. Ollie's Bargain Outlet, Inc.*, 115 F.4th 349, 353 (4th Cir. 2024). But the factual

allegations in the complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

III.

As we explain, the district court correctly dismissed each of the Weskers' claims. We address each in turn.

A.

Under Maryland law, the torts of professional negligence and negligent misrepresentation largely overlap. Both claims require a plaintiff to show that the defendant owed her a duty of care. *E.g.*, *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445, 451 (Md. 2017) (professional negligence); *Griesi v. Atl. Gen. Hosp. Corp.*, 756 A.2d 548, 553 (Md. 2000) (negligent misrepresentation). We therefore begin, and end, our inquiry by asking whether Bank of America owed the Weskers a duty of care in handling their loan modification application. It did not.

Generally, Maryland doesn't recognize a duty of care owed by a bank to a customer. A bank-customer relationship is "ordinarily a contractual relationship between debtor and creditor [which] is not fiduciary in nature." *Yousef v. Trustbank Sav., F.S.B.*, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990) (cleaned up). And "[c]ourts have been exceedingly

---

[6] Because the Weskers represent themselves on appeal*,* we construe the arguments before us liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). But we afford no deference to the allegations in the complaint beyond our normal standard of review because they were represented by counsel in the district court.

7

reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." *Parker v. Columbia Bank*, 604 A.2d 521, 532 (Md. Ct. Spec. App. 1992).

But the Supreme Court of Maryland carved out an exception to this general rule in *Jacques v. First National Bank of Maryland*, 515 A.2d 756 (Md. 1986). There, the court held that a bank may owe a duty in tort where there is "contractual privity or its equivalent." *Id.* at 760. The *Jacques* court held that the bank owed the plaintiffs a duty to process their loan application with reasonable care because the plaintiffs had paid a $144 processing fee—thus constituting consideration—and the bank expressly promised that it would process their loan application and lock in a specified interest rate for 90 days. *Id.* at 761.

The court also noted that because of the "rather extraordinary financing provisions" incorporated into the application, the Jacqueses were "particularly vulnerable and dependent upon the [b]ank's exercise of due care." *Id.* at 762. But the court was careful to limit its holding:

> The case before us is factually distinguishable from those in which a prospective customer simply submits an application for a loan, or for insurance, and thereafter claims that the unilateral act of submitting the application gives rise to a duty on the part of the recipient to act upon it without delay. The courts have generally held in those instances that the bank or insurance company has not undertaken to process the application, and therefore has no duty to do promptly that which it has no duty to do at all.

8

*Id.* (collecting cases). And as Maryland's intermediate appellate court has since explained, "the basis for the duty of care [in *Jacques*] was an express, albeit oral, contract." *Parker*, 604 A.2d at 532.

*Jacques* holds that despite the general rule that a bank owes no duty in tort to its customers, such a duty exists where a contractual obligation is accompanied by a set of special circumstances involving an especially vulnerable party. *See Laws. Title Ins. v. Rex Title Corp.*, 282 F.3d 292, 293–94 (4th Cir. 2002). Maryland courts have recognized those special circumstances where a bank took on "truly extra, out of the ordinary services" beyond the normal servicing of a loan or received a greater economic benefit beyond the normal proceeds of a loan. *Parker*, 604 A.2d at 534.

With this backdrop in mind, we turn to our case.

The Weskers contend that they are in contractual privity with the Bank because their application for a loan modification arose out of the agreement that created the line of credit. In the Weskers' view, because they requested a modification to a preexisting agreement, we may impute the privity arising from the line of credit to the application for a modification.

We disagree for the simple reason that the deed of trust establishing the line of credit doesn't impose any duties on the Bank related to modification.

Indeed, we have rejected a claim on similar facts. In *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769 (4th Cir. 2013), Maryland plaintiffs sued Wells Fargo under a theory that the bank had mishandled their application for a mortgage modification. *Id.* at 774–75. We rebuffed the plaintiffs' contention that a contract existed as to their

9

modification application because "[u]nder long-settled contract law, when 'some further act of the purported offeror is necessary, the purported offeree has no power to create contractual relations, and there is as yet no operative offer.'" *Id.* at 778 (quoting 1 Joseph M. Perillo, *Corbin on Contracts* § 1.11, at 31 (rev. ed. 1993)).  And we likewise rejected the plaintiffs' negligence claim because they had paid no consideration for the modification application, distinguishing that case from *Jacques*.  *Id.* at 780.

So too here.  The Weskers can't unilaterally impose obligations on the Bank that aren't in the contract.  And the Weskers didn't pay any consideration to the Bank to consider their loan modification application.  Therefore, there's no privity with respect to the modification.  To hold otherwise would impose tort liability for every request to modify a loan, which would render hollow Maryland courts' repeated admonition not to "impose any duties on the bank not found in the loan agreement." *Parker*, 604 A.2d at 532.

We also discern no special circumstances.  Urging otherwise, the Weskers list these facts: they were Bank of America customers for 30 years; they had "special privileges"; the Bank had originally held the primary mortgage on their property in addition to the line of credit; the Bank was aware of their financial distress; and the Weskers had a history of timely payments.  Appellants' Br. at 19–20.

But this list describes no more than a typical bank-customer relationship.  In other words, it doesn't suggest conduct through which Bank of America took on obligations beyond those generally seen between a bank and a customer.  Nor does it allege that the Bank obtained any abnormal benefit.

The district court correctly dismissed the tort claims alleged in the complaint.

10

B.

We turn next to the Weskers' detrimental reliance claim.  The Weskers allege that Bank of America represented that (1) their payments would be suspended while it processed the loan modification application, (2) the Bank would approve their application, and (3) the Bank in fact approved their application.  But because the Weskers fail to allege any clear and definite promises made by Bank of America on any of their theories, the claim fails.[7]

The first element of detrimental reliance in Maryland is a clear and definite promise. *Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996).  Read generously, the complaint alleges four statements attributable to Bank of America on which the Weskers relied to their detriment.

First, a representative said that the March 2019 line of credit payment would "not be a problem."  Second, the Bank sent a letter stating that the modification had been denied because (among other reasons) the line of credit was not in severe enough delinquency (implying that further delinquency would lead to approval).  Third, in the same letter, the Bank said that normal servicing would resume unless the Weskers appealed.  Fourth, the Bank's website showed the Weskers' account had a zero balance.

---

[7] On appeal, the Weskers offer a different theory of detrimental reliance.  They say that the Bank promised to provide "a loan modification process that would be administered professionally and with due care."  Appellant's Br. at 24.  Even if we could discern such a promise, and we do not, we don't consider theories raised for the first time on appeal absent exceptional circumstances.  *See Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 235 (4th Cir. 2024) (collecting cases).  We find no such circumstances here.

11

None of these allegations are "clear and definite" statements that the Weskers' were no longer obligated to pay on the line of credit—which given that the Bank continued to send them monthly statements would be a curious conclusion—or that their application would be approved. They merely memorialize the various stages of the application process, from hopeful beginning to disappointing end. Nowhere is there a "clear and definite" statement relieving the Weskers from their payment obligations or a statement that Bank of America would approve the modification.

At the outer limit, the statement that normal servicing would resume unless the Weskers appealed *might* suggest an *inference* that their payment obligations had been suspended. But "an implied understanding or an implied agreement" is "quite dissimilar from a clear and definite promise." *Konover Prop. Tr., Inc. v. WHE Assocs., Inc.*, 790 A.2d 720, 724–25 (Md. Ct. Spec. App. 2002). And it strains credulity to conclude that an online account showing a zero balance on the line of credit (because the Bank had charged off the loan) was a clear and definite promise that the Weskers' request for a modification (not forgiveness) had been approved.

The district court correctly dismissed the claim alleging detrimental reliance.

## C.

The Weskers also bring claims of negligent and willful violations of the Fair Credit Reporting Act. On their view, Bank of America violated the Act because it reported the Weskers' delinquency and the charge off to consumer reporting agencies when it should have approved their application in the first instance.

12

The Fair Credit Reporting Act provides causes of action to consumers for willful or negligent noncompliance with the Act. 15 U.S.C. §§ 1681n, 1681o. As a furnisher of information to consumer reporting agencies, Bank of America has an obligation to provide accurate information to the agencies. *Id.* § 1681s-2(a). Subsection 1681s-2(b) requires furnishers like the Bank, upon receiving notice of a dispute about the completeness or accuracy of any information, to investigate the disputed information and report the results of the investigation to the consumer reporting agencies.

No one disputes that a plaintiff suing a furnisher of information must challenge the "completeness or accuracy" of the provided information.[8] *Id.* § 1681s-2(b). We've "held that a report is inaccurate not only when it is patently incorrect but also when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008) (cleaned up).

That's not what happened here. The Weskers were delinquent on their line of credit. And Bank of America charged off the loan. This is what Bank of America reported, and neither side disputes that's what happened. The Weskers' claims thus don't challenge the "completeness or accuracy" of Bank of America's reporting, 15 U.S.C. § 1681s-2(b); they collaterally attack the decision not to grant them the loan modification. But the purpose of the Fair Credit Reporting Act is to ensure fair and accurate credit reporting, *id*. § 1681(a), not to govern loan modification applications.

---

[8] A private plaintiff generally may not sue for alleged violations of 15 U.S.C. § 1681s-2(a). *Id.* § 1681s-2(c)(1).

We therefore affirm the district court's dismissal of these claims.

D.

Lastly, we affirm the district court's dismissal of the Weskers' claim under the Maryland Consumer Protection Act. The Act prohibits various "unfair, abusive, or deceptive trade practices." Md. Code Ann., Com. Law §§ 13–301, –303. Because a claim under the Act "sounds in fraud," a plaintiff must satisfy the higher pleading standards of Federal Rule of Civil Procedure 9(b). *Spaulding*, 714 F.3d at 781. We look for "the time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." *Id.* (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

None of the statements the Weskers' allege Bank of America made meet this standard. Some are conclusory, such as the claims that the Weskers were denied relief "without a legitimate basis," that the Bank "[m]isrepresent[ed] the nature of the Home Loan Assistance Program," or that the Bank solicited the Weskers to apply when it knew they would not qualify. J.A. 19. Without more details, these claims don't satisfy the high bar of Rule 9(b).

Others are claims we've already rejected, such as the claim that Bank of America misrepresented that the Weskers' payment obligations were suspended and that their line of credit payments were no longer due. And the remaining allegations, that the Bank failed to properly process the application and that it informed the Weskers that it didn't have documents that the Weskers had provided, are not allegations of "deceptive" business practices—they are merely complaints about how the Bank handled the application.

14

Because these barebone allegations don't meet the heightened pleading standard of Rule 9(b), the district court was right to dismiss the Weskers' Maryland Consumer Protection Act claim.

## IV.

We affirm the district court's judgment. And we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and arguments would not aid in our decision.

*AFFIRMED*